## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

CHRISTOPHER MCCULLOUGH,)
                  )

PETITIONER,         )
                  )

vs.                  )     CASE NO.  3:07-CV-71-WHA
                  )

DANIEL JONES, WARDEN, et al., )
                  )

     RESPONDENTS.      )

### RESPONDENTS' ANSWER TO PETITION FOR
### WRIT OF HABEAS CORPUS

Come now the Respondents, by and through the Attorney General for the

State of Alabama, and, pursuant to this Court's January 25, 2007 and February 14,

2007 orders, hereby respectfully submit this Answer to the petition for writ of

habeas corpus filed by Christopher McCullough challenging his November 14,

2003 Chambers County Circuit Court conviction of attempted first degree burglary

and its corresponding sentence (Chambers County Circuit Court CC-02-318).

    The Respondents deny that McCullough is entitled to any relief whatsoever

under the federal writ of habeas corpus.

### PROCEDURAL BACKGROUND

**A.  McCullough's conviction and sentence in Chambers County Circuit
Court CC-02-318, and direct appeal**

1. On November 14, 2003, McCullough was convicted in Chambers County Circuit Court CC-02-318 of the offense of attempted first degree burglary, a violation of Alabama Code (1975) Sections 13A-4-2 and 13A-7-5, following a jury trial. Ex. 1A, (C. 26).[1] Chambers County Circuit Court Judge Ray D. Martin presided over McCullough's trial and sentencing. Ex. 1A, (C. 28, R. 1, Sent. R. 1). The conviction arose from a burglary spree committed by McCullough in and around Lanett, Alabama, and was one of several convictions of McCullough arising from that spree.[2]

2. On January 15, 2004, the trial court sentenced McCullough pursuant to the Alabama Habitual Felony Offender Act to forty years' imprisonment. Ex. 1A, (C. 28, Sent. R 13-16).

---

[1] The clerk's record and trial transcript of McCullough's jury trial and resulting conviction and sentence -- i.e., the record on appeal from McCullough's direct appeal from this judgment -- are included as Exhibit 1A to the instant Answer.

[2] Though not directly at issue in this petition, it is noted that, in a separate trial, McCullough was convicted on November 7, 2002 of first degree burglary and second degree theft in Chambers County Circuit Court CC-02-189 arising from the same burglary spree, and he currently challenges those convictions and resulting sentences through his federal habeas petition in McCullough v. Jones, et al., 3:07-CV-26-MEF, filed simultaneously with the instant petition in this Court on December 28, 2006. The Respondents filed their answer to that petition in this Court on February 13, 2006. As will be discussed below, McCullough appears to have attached a brief supporting his challenge to the instant November 14, 2003 attempted burglary conviction to his petition in McCullough v. Jones, et al., 3:07-CV-26-MEF. See McCullough v. Jones, et al., 3:07-CV-26-MEF, Doc. 2, pp. 1-28. For that reason, the claims in that brief shall be construed as challenging the attempted burglary conviction at issue, and, accordingly, are addressed as such in the instant Answer.

3.  McCullough appealed to the Alabama Court of Criminal Appeals, and, in his Appellant's Brief, submitted the following arguments against his conviction: 1) the jury's verdict was against the sufficiency and weight of the evidence;  2) the State failed to corroborate the testimony of co-conspirator Billy Ralph Norris; and, 3) the trial court erred in refusing to instruct the jury regarding the offense of attempted criminal trespass.  Ex. 1B (Appellant's Brief p. 10-13; 14-17; 17-21). The State submitted an Appellee's Brief arguing for the affirmance of the trial court's judgment.  Ex. 1C.

4.  The Court of Criminal Appeals affirmed McCullough's attempted burglary conviction by memorandum opinion in <u>McCullough v. State</u>, CR-03-1103 (Ala. Crim. App. Sep. 24, 2004).  Ex. 1D.   The Court of Criminal Appeals held: 1) the trial court did not err in submitting McCullough's case to the jury, and the jury's verdict was not against weight of the evidence; 2) McCullough failed to preserve his uncorroborated accomplice testimony claim for appellate review, and, even if it had been properly preserved, the claim was meritless; and, 3) the trial court did not abuse its discretion in its refusal to instruct the jury regarding criminal trespass.  Ex. 1D, pp. 1-10.   McCullough did not file an application for rehearing or thereafter seek certiorari review in the Alabama Supreme Court; accordingly, the Court of Criminal Appeals entered a certificate of judgment on October 13, 2004.  Ex. 1E.

**B. McCullough's post-conviction proceedings pursuant to Ala.R.Crim.P. Rule 32 in Chambers County Circuit Court CC-02-318.61**

5.  On July 27, 2005, McCullough filed a petition in Chambers County

Circuit Court pursuant to Ala.R.Crim.P.  Rule 32 challenging this conviction.  Ex.

2A.  McCullough asserted in the petition that it was mailed on July 20, 2005.  Ex.

2A, p. 7.  The petition was docketed as Chambers County Circuit Court CC-02-

318.61.[3]  In the petition, McCullough circled the following grounds of relief:  "(3)

Conviction obtained by use of evidence gained pursuant to an unconstitutional

search and seizure";  (5) Conviction obtained by violation of the privilege against

self-incrimination"; "(6)) Conviction obtained by the unconstitutional failure of the

prosecution to disclose to the defendant evidence favorable to the defendant";  "(9)

Denial of effective assistance of counsel."  Ex. 2A, p. 5.  In support of these

claims, he argued: 1) the City of Lanett Police Department illegally searched his

---

[3] While Alabama state courts normally denote Rule 32 cases with a ".60," ".61," ".63," etc. added to the original case number, the Chambers County Circuit Court did not docket a separate casefile for the Rule 32 petition challenging the burglary and theft convictions (CC-02-189) at issue in McCullough v. Jones, et al., 3:07-CV-26-MEF.  The Rule 32 petition challenging those convictions was erroneously docketed as CC-02-318.60, see Respondents' February 13, 2007 Answer in McCullough v. Jones, et al., 3:07-CV-26-MEF, which apparently resulted in the docketing of the July 20, 2005 Rule 32 petition challenging the attempted burglary conviction at issue here as CC-02-318.61 -- typically the number reserved for a second Rule 32 petition challenging a conviction.

Mustang car; 2) he was "partially convicted because [he] used the word gang to prove to the jury that [he] told the truth[,]" and he "said that Billy Norris wanted to burglarize this house to get recognition for street credibility"; 3) the State withheld a videotape of the interior of his car showing a ski mask that was seen in his pocket; 4) he was denied effective assistance of counsel, because his trial counsel (who also served as counsel on direct appeal), Kyla Kelim, Esq., "failed to produce the productivity to win this jury trial. She allowed the State to produce false evidence and did not question the arresting officers properly like I asked[;]" he "never had any intentions of committing any crime[,]" but "was just there to observe a [sic] illegal action which [he] stopped from happening." Ex. 2A, pp. 8-10.

6. The trial court directed the State to respond to the petition, and the State requested that the trial court to deny the petition; McCullough then responded to the State's response. Exs. 2B, 2C, 2D. The trial court then summarily dismissed the petition on November 17, 2005. Ex. 2E.[4] McCullough did not appeal from the trial court's judgment. Id.

---

[4]In his habeas petition, McCullough incorrectly states that the trial court dismissed the Rule 32 petition on September 26, 2005. Petition p. 2. McCullough's apparent confusion as to the date may arise from the fact that the trial court dismissed the Rule 32 petition in CC-02-318.60, at issue in McCullough v. Jones, et al., 3:07-CV-26-MEF, on that date.

**C. The instant petition for habeas corpus**

7.  In the instant December 28, 2006 petition before this Court,

McCullough seeks a federal writ of habeas corpus for relief from his attempted

burglary conviction on the following grounds:

> 1)  His conviction stemmed from an unlawful warrantless search of
> his 1998 Mustang car;
>
> 2)  His conviction violated his right against self-incrimination,
> because he testified at trial that co-defendant Billy Norris "wanted to
> do something illegal to join a gang" and that he (McCullough) "was
> there to eyewitness the event not to participate[,]" and "stopped him
> from doing anything";
>
> 3)  The State failed to disclose favorable evidence that there were "no
> DNA samples of hair from the ski mask and no fingerprints on either
> of these guns"; apparently, McCullough also argues that the State
> admitted the ski mask into evidence, and that the City of Lanett police
> officers "did let me walk away with this ski-mask on which [he]
> disposed of once [he] got to the Lanett Police Department."

Petition p. 5.

8.  In a brief that McCullough appears to have inadvertently attached

to his habeas petition in McCullough v. Jones, et al., 3:07-CV-26-MEF, filed

simultaneously with the instant petition in this Court on December 28, 2006,

he appears to argue the following claims against the attempted burglary

conviction (numbered sequentially with the above-stated claims):

> 4)  The jury's verdict was "contrary to the law and the weight of the
> evidence," essentially questioning the credibility of the State's trial
> witnesses;

5) The State admitted "false evidence," a ski mask which McCullough "disposed of...at the Lanett Police Department";

6) The trial court erred in instructing the jury regarding second degree attempted burglary, and should have instructed the jury regarding third degree attempted burglary as a lesser included offense because the evidence "showed that no weapon was involved in this alleged crime";

7) The City of Lanett Police Department officers unlawfully searched his car without probable cause to do so;

8) "Conflicted testimony of state witnesses";

9) His right against self-incrimination was violated when he testified at trial that he entered the property in question to stop Norris from committing a crime;

10) Defense counsel Kyla Kelim, Esq., who represented McCullough both at trial and on appeal, rendered ineffective assistance as trial and appellate counsel because she A) "allowed the State to introduce false evidence to wit: a ski mask[,]" B) did not introduce a videotape that would show that the police officers "did not take this ski mask from [him][,]" C) "lost [his] appeal[,]" D) did not object to Norris's testimony regarding his guilty pleas or cross-examine him regarding his withdrawal of his guilty plea, E) did not object to the State's closing argument;

11) he challenged the "criteria for signing [a waiver of rights form] to the degree of proper prospectiveness of enlightment[,] [sic]" and he "did not sign, endorse, or verify" his statement to the police.

McCullough v. Jones, et al., 3:07-CV-26-MEF, Doc. 2, pp. 10-13; 13; 14-15; 16-18; 18; 18-21; 22-24; 25-26.

9. By its January 25, 2007 and February 14, 2007 orders, this Court directed the Respondents to answer McCullough's petition. Docs. 4-1, 7.

## ARGUMENT

**MCCULLOUGH'S HABEAS PETITION IS UNTIMELY, AND ITS CLAIMS ARE PROCEDURALLY DEFAULTED; ACCORDINGLY, THIS COURT SHOULD DISMISS THE PETITION.**

### A. McCullough's petition is time-barred.

10. McCullough's petition is barred by the limitation period set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244 (d)(1).

11. The AEDPA, which became effective on April 24, 1996, imposes a one-year statute of limitation on all habeas corpus petitions; "[t]his rule 'serves the well-recognized interest in the finality of state court judgments' and 'reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review.'" Drew v. Department of Corrections, 297 F.3d 1278, 1283 (11th Cir. 2002), citing Duncan v. Walker, 533 U.S. 167, 179, 121 S. Ct. 2120, 2128 (2001). Title 28 U.S.C. § 2244 (d)(1)(A) provides that the limitation period begins to run on the date that the time for seeking direct review of the challenged judgment expires.

12. When a petitioner seeks certiorari review in the Alabama Supreme Court on direct appeal, but does not seek certiorari review in the United States Supreme Court, the AEDPA limitation period begins to run ninety days after the Alabama Supreme Court's entry of its certificate of judgment -- the time within

which the petitioner could have sought certiorari review in the United States

Supreme Court, had he chosen to do so.  See Coates v. Byrd, 211 F. 3d 1225 (11th

Cir. 2000); Rule 13.1, Rules of the United States Supreme Court.  However, when

a petitioner appeals to an intermediate appellate court but does not seek rehearing

in that court or certiorari review in the state's highest court, the AEDPA limitation

period begins to run on the date of the intermediate appellate court's certificate of

judgment, with no allowance for seeking certiorari review in the United States

Supreme Court.  The failure to seek a full review in the Alabama Court of Criminal

Appeals, Alabama's intermediate appellate court for criminal cases, prevents

certiorari review in the Alabama Supreme Court, Alabama's highest appellate

court.  See Ala.R.App.P. 40(d)(1) ("In all criminal cases except pretrial appeals by

the state, the filing of an application for rehearing in the Alabama Court of

Criminal Appeals is a prerequisite to certiorari review by the Alabama Supreme

Court.").  The failure to seek review in the Alabama Supreme Court divests the

United States Supreme Court of jurisdiction to review a petition for a writ of

certiorari in that Court.  See Rule 13.1, Rules of the United States Supreme Court;

28 U.S.C. § 1257 (a) ("Final judgments or decrees rendered by the highest court of

a State in which a decision could be had, may be reviewed by the Supreme Court

by writ of certiorari where...any title, right, privilege, or immunity is specially set

up or claimed under the Constitution or the treaties or statutes of, or any

commission held or authority exercised under, the United States.")  Thus, a habeas petitioner under these circumstances is not entitled to statutory tolling during the 90-day period within which he might have sought certiorari review in the United States Supreme Court, had he first sought review of his conviction in the state's highest court.  See Tinker v. Moore, 255 F. 3d 1331, 1332-1333 (11th Cir. 2001), cert. denied, 534 U.S. 1144, 122 S. Ct. 1101 (2002).

13.  The one-year limitation period is subject to statutory tolling under certain circumstances, such as when a properly filed state court postconviction petition is pending for review.  Goodman v. United States, 151 F. 3d 1335, 1337 (11th Cir. 1998); 28 U.S.C. § 2244 (d)(2).  This tolling provision "does not encompass a period of time in which a state prisoner does not have a 'properly filed' post-conviction application actually pending in state court." Moore v. Crosby, 321 F. 3d 1377, 1381 (11th Cir. 2003).  "The days when nothing was pending would count toward the one-year limitation period." Stafford v. Thompson, 328 F. 3d 1302, 1303 (11th Cir. 2003).

14.  McCullough's conviction and sentence became final on October 13, 2004, the date of the Court of Criminal Appeals' entry of its certificate of judgment.  Ex. 1E.  The limitation period for filing a federal habeas petition began to run on this date.  See, e.g., Title 28 U.S.C. § 2244 (d)(1)(A); Tinker v. Moore, 255 F. 3d at 1332-1333.

15.   McCullough presumably filed his <u>Ala.R.Crim.P.</u> Rule 32 petition on July 20, 2005, the date that he presumably delivered it for mailing by prison authorities as he indicated in the petition, though it was stamped as filed on July 27, 2005.  Ex. 2A.   A pro se inmate's petition is deemed filed on the date it is delivered to prison officials for mailing.  <u>Houston v. Lack</u>, 487 U.S. 266, 271-272, 108 S. Ct. 2379 (1988); <u>see</u> <u>also</u> <u>Ex parte Allen</u>, 825 So. 2d 271, 272 (Ala. 2002) (noting that "Alabama courts have held that a pro se incarcerated petitioner/appellant is considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those documents are given to prison officials for mailing.").  McCullough's July 20, 2005 filing of the Rule 32 petition tolled the AEDPA limitation period.  <u>Webster v. Moore</u>, 199 F. 3d 1256, 1259 (11th Cir. 2000); 28 U.S.C. § 2244 (d)(2).  However, between October 13, 2004 and July 20, 2005, 280 days of McCullough's one-year limitation period for filing his habeas petition had passed; 85 days of the period remained within which McCullough could file the petition.

16.   On November 17, 2005, the trial court denied McCullough's Rule 32 petition.  Ex. 2E.  McCullough did not appeal from this judgment within 42 days as allowed by <u>Ala.R.App.P.</u> Rule 4 (b); thus, the AEDPA limitation period began to run again on December 29, 2005, the 42nd and final day that the Rule 32 proceeding remained pending in state court.  <u>See</u> <u>Cramer v. Secretary, Dept. of</u>

Corrections, 461 F. 3d 1380, 1384 (11th Cir. 2006) (AEDPA limitation period tolled for time during which appeal could have been taken from state court's denial of petition for post-conviction relief, regardless whether appeal was taken).

      17.  After allowing for statutory tolling, and including the 280 days between the October 13, 2004 conclusion of McCullough's direct appeal proceedings and the July 20, 2005 filing of his Rule 32 petition, the one year AEDPA limitation period applicable to McCullough's convictions expired on March 24, 2006, the 85th day after the limitation period began running again on November 17, 2005. McCullough filed the instant petition in this Court on December 28, 2006. Accordingly, McCullough's petition was filed  279 days outside the one-year AEDPA limitation period.

      18.  McCullough has shown no "rare and exceptional" circumstances that would entitle him to equitable tolling, "an extraordinary remedy which is typically applied sparingly[,]" to excuse his failure to file within the statutory period. Arthur v. Allen,  452 F. 3d 1234, 1253 (11th Cir. 2006); Steed v. Head, 219 F. 3d 1298, 1300 (11th Cir. 2000).  It is noted that, in his response to his petition's question regarding why he "did not appeal from the adverse action on any petition, application or motion," McCullough asserts that he did not receive notice of the trial court's denial of his Rule 32 petition until December 1, 2006:

> "I did not receive any notification that this petition was dismissed or denied until December 1, 2006 on which I had to writ the circuit clerk Charles W. Story for this information."

This assertion, without more, cannot suffice to support a claim for the "extraordinary remedy" of equitable tolling. While "[a] lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas petition[,]" Drew v. Department of Corrections, 297 F. 3d at 1288, McCullough has made no such showing of extraordinary circumstances both beyond his control and unavoidable even with diligence to justify equitable tolling. See also, e.g., Logreira v. Secretary for the Dept. of Corrections, 161 Fed. Appx. 902 (11th Cir. 2006) (unpublished opinion discussing Drew and the standards for equitable tolling in such circumstances and finding no error in district court's dismissal of untimely habeas petition); Ilarion v Crosby, 179 Fed. Appx. 653 (11th Cir. 2006) (unpublished opinion discussing Drew and equitable tolling, finding no error in district court's dismissal of untimely habeas petition, and noting "[t]o date, we have held only once in a published opinion that equitable tolling applied to the AEDPA's one year statute of limitation.").

19. Accordingly, McCullough's petition is due to be dismissed as untimely, and this Court need look no further for its disposition of the petition.

**B. McCullough's various claims are procedurally defaulted.**

20.  The untimeliness of McCullough's petition renders it barred from this Court's review.  Even if McCullough had timely filed the habeas petition, however, its claims are procedurally defaulted.

21.  This Court will not review claims made in a petition for habeas corpus that were not first properly presented to the state courts.  "Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court."  McNair v. Campbell, 416 F. 3d 1291, 1302  (11th Cir. 2005).  28 U.S.C. § 2254 (b)(1)(A) requires the federal habeas petitioner to first exhaust his remedies in the state court system; this exhaustion requirement is "grounded in the principles of comity and federalism[.]"  Henderson v. Campbell, 353 F. 3d 880, 897-898 (11th Cir. 2003).  "[I]n a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights."  Coleman v. Thompson, 501 U.S. 722, 731, 111 S. Ct. 2546, 2555 (1991).  "The exhaustion doctrine...is now codified at 28 U.S.C. § 2254 (b) (1)[.]"  O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999).

22.  For purposes of exhaustion, the habeas claims must have been presented throughout the state appellate court system.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary.'" Pruitt v. Jones, 348 F. 3d 1355, 1358-59 (11th Cir. 2003) (citing Boerckel, 526 U.S. at 845, 119 S. Ct. at 1732-1733). The certiorari review procedure of the Alabama Supreme Court falls within the Boerckel rule. Smith v. Jones, 256 F. 3d 1135, 1140 (11th Cir. 2001). "Under Alabama law, 'one complete round' of review... includes: (1) filing a petition for certiorari in state circuit court, see Johnson v. State, 729 So. 2d 897, 898 (Ala. Crim. App. 1997); (2) appealing the denial of that petition to the Alabama Court of Criminal Appeals, see Ala.Code § 12-3-9 (2003); Johnson, 729 So. 2d at 898; (3) petitioning the Alabama Court of Criminal Appeals for rehearing, see Ala.R.App.P. 39(c)(1); and (4) seeking discretionary review in the Alabama Supreme Court, see Ala.R.App.P. 39 (c)." Dill v. Holt, 371 F. 3d 1301, 1303 (11th Cir. 2004).

    23.  As noted above, in the instant December 28, 2006 petition before this Court, McCullough argues that he is entitled to federal habeas relief on the following grounds:

    1)   His conviction stemmed from an unlawful warrantless search of his 1998 Mustang car;

    2)  His conviction violated his right against self-incrimination, because he testified at trial that co-defendant Billy Norris "wanted to do something illegal to join a gang" and that he (McCullough) "was there to eyewitness the event not to participate[,]" and "stopped him from doing anything";

3)  The State failed to disclose favorable evidence that there were "no DNA samples of hair from the ski mask and no fingerprints on either of these guns"; apparently, McCullough also argues that the State admitted the ski mask into evidence, and that the City of Lanett police officers "did let me walk away with this ski-mask on which [he] disposed of once [he] got to the Lanett Police Department."

Petition p. 5.

As also noted above, in the brief filed with his habeas petition in McCullough v.

Jones, et al., 3:07-CV-26-MEF, McCullough appears to argue the following claims

(numbered sequentially with the above-stated claims):

4)  the jury's verdict was "contrary to the law and the weight of the evidence," essentially questioning the credibility of the State's trial witnesses;

5) the State admitted "false evidence," a ski mask which McCullough "disposed of...at the Lanett Police Department";

6) the trial court erred in instructing the jury regarding second degree attempted burglary, and should have instructed the jury regarding third degree attempted burglary as a lesser included offense because the evidence "showed that no weapon was involved in this alleged crime";

7) the City of Lanett Police Department officers unlawfully searched his car without probable cause to do so;

8) "Conflicted testimony of state witnesses";

9) His right against self-incrimination was violated when he testified at trial that he entered the property in question to stop Norris from committing a crime;

10) defense counsel Kyla Kelim, Esq., who represented McCullough both at trial and on appeal, rendered ineffective assistance of counsel

because she A) "allowed the State to introduce false evidence to wit: a ski mask[,]" B) did not introduce a videotape that would show that the police officers "did not take this ski mask from [him][,]" C) "lost [his] appeal[,]" D) did not object to Norris's testimony regarding his guilty pleas or cross-examine him regarding his withdrawal of his guilty plea, E) did not object to the State's closing argument;

11) he challenged the "criteria for signing [a waiver of rights form] to the degree of proper prospectiveness of enlightment[,]" and he "did not sign, endorse, or verify" his statement to the police.

McCullough v. Jones, et al., 3:07-CV-26-MEF, Doc. 2, pp. 10-13; 13; 14-15; 16-18; 18; 18-21; 22-24; 25-26.

24.  Of these claims, McCullough appears to have raised Claim 1, his argument against the sufficiency and weight of the evidence, during his direct appeal proceedings, see Ex. 1B (Appellant's Brief 10-13), but did not file an application for rehearing or seek certiorari review in the Alabama Supreme Court after the Court of Criminal Appeals affirmed his conviction in McCullough v. State, CR-03-1103 (Ala. Crim. App. Sep. 24, 2004).  McCullough thus failed to exhaust this claim by seeking full review in the state courts.  Boerckel, 526 U.S. at 842, 119 S. Ct. at 1731; Smith, 256 F. 3d at 1140.

25.  McCullough does not appear to have specifically raised Claims 3, 5, 6, 8, or 11 on direct appeal or in his Rule 32 petition.  Further, those portions of McCullough's Claim 10 -- regarding the alleged ineffectiveness of defense counsel -- whereby he questions counsel's effectiveness at trial in failing to object to the State's closing argument, failing to introduce a videotape into evidence, failing to

object to his co-conspirator's testimony, and failing to object to the State's closing argument, and also alleges that she rendered ineffective assistance by "los[ing] his appeal," were not specifically raised on direct appeal or in his Rule 32 petition. They are procedurally defaulted for this reason. 28 U.S.C. § 2254 (b)(1)(A); Coleman, 501 U.S. at 731, 111 S. Ct. at 2555.

26.  McCullough appears to have raised Claims 2, 5, 7, 9, and that portion of Claim 10 regarding defense counsel's alleged ineffectiveness in "allow[ing] the State to introduce false evidence[,]" in his Rule 32 petition, but he failed to appeal from the trial court's judgment on that petition; accordingly, by his failure to exhaust them through a complete round of review in the state courts, they are procedurally defaulted. Boerckel, 526 U.S. at 842, 119 S. Ct. at 1731; Smith, 256 F. 3d at 1140.

27.  As to McCullough's Claims 1, 3, 5, 6, 8, the portions of Claim 10 discussed in Paragraph 25 above, and 11, these claims are not capable of further presentation to the state courts via Ala.R.Crim.P. Rule 32 because they would stem from an untimely, successive petition, and because they could have been raised at trial or on direct appeal. Ala.R.Crim.P. Rules 32.2 (a)(3), (a)(5), (b), (c).

28.  It is noted that as to McCullough's Claims 2, 5, 7, 9, and that portion of Claim 10 discussed in Paragraph 26 above -- those claims that McCullough appears to have raised in his dismissed Rule 32 petition  from which, he alleges, he

could not appeal because he did not receive notice of the judgment until December

1, 2006 -- McCullough could seek an out-of-time appeal from the judgment via

Ala.R.Crim.P Rule 32.1 (f) and Rule 32.2 (c), which provide:

"Rule 32.1 SCOPE OF REMEDY

"Subject to the limitations of Rule 32.2, any defendant who has been
convicted of a criminal offense may institute a proceeding in the court of
original conviction to secure appropriate relief on the ground that:

"...

"(f)  The petitioner failed to appeal within the prescribed time from the
conviction or sentence itself or form the dismissal or denial of a petition
previously filed pursuant to this rule and that failure was without fault on the
petitioner's part.

"...

"Rule 32.2 PRECLUSION OF REMEDY

"...

"(c) Limitations Period.

" Subject to the further provisions hereinafter set out in this section,
the court shall not entertain any petition for relief from a conviction or
sentence on the grounds specified in Rule 32.1(a) and (f), unless the
petition is filed: (1) In the case of a conviction appealed to the Court
of Criminal Appeals, within one (1) year after the issuance of the
certificate of judgment by the Court of Criminal Appeals under Rule
41, Ala.R.App.P.; or (2) in the case of a conviction not appealed to the
Court of Criminal Appeals, within one (1) year after the time for filing
an appeal lapses; provided, however, that the time for filing a petition
under Rule 32.1(f) to seek an out-of-time appeal from the dismissal or
denial of a petition previously filed under any provision of Rule 32.1
shall be six (6) months from the date the petitioner discovers the
dismissal or denial, irrespective of the one-year deadlines specified in

the preceding subparts (1) and (2) of this sentence; and provided further that the immediately preceding proviso shall not extend either of those one-year deadlines as they may apply to the previously filed petition."

(Emphasis added.)  He has not done so.

29.  It is respectfully submitted, however, that McCullough's failure to timely file his habeas petition in this Court renders the exhaustion issue as it pertains to these claims -- the potential that he might be allowed by the trial court to present these claims in an out-of-time appeal -- moot.  This Court should not even reach the issue regarding whether McCullough may still exhaust these claims through the filing of a Rule 32 petition seeking an out-of-time appeal from the trial court's judgment on his first Rule 32 petition, because he has failed to meet the standards of equitable tolling to excuse his untimely habeas petition.  As noted above, McCullough must show extraordinary circumstances both beyond his control and unavoidable even with diligence arising from the alleged lack of notice for this Court to grant equitable tolling and thereafter review the nature of his claims in his untimely petition.  While McCullough could file a Rule 32 petition seeking an out-of-time appeal -- which may or may not be successful -- that filing would not revive the AEDPA limitation period, which expired on March 24, 2006.

"[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it. See Moore v. Crosby, 321 F. 3d 1377, 1381 (11th Cir.2003) ('While a 'properly filed' application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of limitations once

the limitations period has expired. In other words, the tolling
provision does not operate to revive the one-year limitations period if
such period has expired.')."

Sibley v. Culliver  377 F. 3d 1196, 1204 (11th Cir. 2004).

"In the present case...petitioner filed his final motion for a belated
appeal outside the federal limitations period.

"...

"[W]e hold that the petitioner's belated appeal motion [seeking an
out-of-time appeal from denial of petition for post-conviction relief]
was not pending during the limitations period.  The statutory tolling
provision does not encompass a period of time in which a state
prisoner does not have a 'properly filed' post-conviction actually
pending in state court."

Moore v. Crosby, 321 F. 3d 1377, 1379, 1381 (11th Cir. 2003).  Without a
finding of equitable tolling to excuse this untimely petition -- a showing of
which McCullough has failed to make -- the potential availability of an out-
of-time appeal is of no consequence here.

   30.  McCullough has not shown cause and actual prejudice arising
from an alleged violation of federal law, nor has he shown a resulting
fundamental miscarriage of justice if this Court does not consider the merits
of the claims.  E.g., Schlup v. Delo, 513 U.S. 298, 320, 115 S. Ct. 851, 864,
130 L. Ed. 2d 808 (1995).

## CONCLUSION

For the foregoing reasons, this Court should dismiss McCullough's petition

for writ of habeas corpus.

Respectfully submitted,

Troy King(KIN047)
Attorney General
By:


/s/Marc A. Starrett
Marc A. Starrett
Assistant Attorney General
ID #STARM1168

## EXHIBITS

EXHIBIT 1A:  Record on appeal in McCullough's attempted burglary conviction, McCullough v. State, Alabama Court of Criminal Appeals CR-03-1103 **(SUBMITTED BY CONVENTIONAL, RATHER THAN ELECTRONIC, MEANS DUE TO LENGTH )**

Exhibit 1B:  McCullough's Appellant's Brief, McCullough v. State, Alabama Court of Criminal Appeals CR-03-1103

Exhibit 1C:  State of Alabama's Appellee's Brief, McCullough v. State, Alabama Court of Criminal Appeals CR-03-1103

Exhibit 1D:   Alabama Court of Criminal Appeals' September 4, 2004 memorandum opinion affirming the trial court's judgment, McCullough v. State, Alabama Court of Criminal Appeals CR-03-1103

Exhibit 1E: Alabama Court of Criminal Appeals' October 13, 2004 certificate of judgment, McCullough v. State, Alabama Court of Criminal Appeals CR-03-1103 (Ala. Crim. App. Oct. 13, 2004)

Exhibit 2A:  McCullough's July 20, 2005 Ala.R.Crim.P. Rule 32 petition, McCullough v. State, Chambers County Circuit Court CC-02-318.61

Exhibit 2B:  Chambers County Circuit Court August 31, 2005 order directing the State to respond to McCullough's Rule 32 petition, McCullough v. State, Chambers County Circuit Court CC-02-318.61

Exhibit 2C:  State's Response to McCullough's Rule 32 petition, McCullough v. State, Chambers County Circuit Court CC-02-318.61

Exhibit 2D.  McCullough's Reply to State's Response, McCullough v. State, Chambers County Circuit Court CC-02-318.61

Exhibit 2E:  Chambers County Circuit Court November 17, 2005 order summarily dismissing McCullough's Rule 32 petition, McCullough v. State, Chambers County Circuit Court CC-02-318.61

## CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of February, 2007, I electronically

filed the foregoing, excluding Exhibit 1A which is filed by hand delivery on

today's date, with the Clerk of the Court using the CM/ECF system and I hereby

certify that I have mailed by United States Postal Service the document with all

exhibits to the following non-CM/ECF participant:

CHRISTOPHER MCCULLOUGH, AIS # 174909
Inmate, Donaldson Correctional Facility
100 Warrior Lane
Bessemer, Alabama  35023


/s/Marc A. Starrett
Marc A. Starrett (STARM1168)
Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 242-2848
E-Mail:  MStarrett@AGO.State.Al.US

ADDRRESS  OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama  36130-0152
(334) 242-7300

235197

IN THE COURT OF CRIMINAL APPEALS
IN AND FOR THE STATE OF ALABAMA

CHRISTOPHER MCCULLOUGH,

    Appellant,

vs.                  CR. No.: 03-1103

STATE OF ALABAMA,

    Appellee.

On Appeal from
The Circuit Court of Chambers County, Alabama
Trial Court Case No.: CC-2002-318

## INITIAL BRIEF OF APPELLANT

ORAL ARGUMENT REQUESTED

Kyla Groff Kelim
ALEC BROWN & ASSOCIATES, P.C.
217 Madison Street
P.O. Box 1977
Alexander City, AL 35011

**Attorney for Appellant**



EXHIBIT
1B

## PRELIMINARY STATEMENT

References in the brief to the record on appeal shall be made to a page number in the clerk's record prefaced by the letter "C".  References in the brief to the reporter's transcript of the trial shall be made to a page number in the transcript prefaced by the letter "R".  References in the brief to the reporter's transcript of the sentencing hearing shall be made to a page number in the transcript prefaced by the letters "RR" to avoid confusion as this transcript is labeled in the record as the letter "R" preceding the pages numbered one through sixteen.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is respectfully requested.  The factual and legal arguments presented in the briefs and records and the decisional process would be significantly aided by oral argument.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT...................... i.

STATEMENT REGARDING ORAL ARGUMENT......... ii.

TABLE OF CONTENTS......................... iii.

TABLE OF AUTHORITIES...................... iv.

STATEMENT OF THE CASE..................... 1.

STATEMENT OF ISSUES PRESENTED FOR REVIEW.. 4.

STATEMENT OF FACTS........................ 5.

SUMMARY OF ARGUMENT....................... 7.

ARGUMENT.................................. 8.

I.   **VERDICT WAS CONTRARY TO THE LAW AND THE WEIGHT OF THE EVIDENCE.............................. 10.**

II.  **TRIAL COURT ERRED BY FAILING TO INSTRUCT JURY ON LESSER INCLUDED CHARGE OF CRIMINAL TRESPASS.    14.**

III. **CORROBORATION OF CO-DEFENDANT'S TESTIMONY NECESSARY TO UPHOLD CONVICTION WAS NOT PRESENTED...    17.**

CONCLUSION................................ 22.

SUMMARY OF ADVERSE DECISIONS.............. 23.

CERTIFICATE OF SERVICE.................... CS-1

## TABLE OF AUTHORITIES

<u>Authority</u>:                                        <u>Page No(s)</u>:

**Cases:**

*Aucoin v. State*, 548 So.2d 1053, 1057

    (Ala. Crim. App. 1989)............    17

*C.P. v. State*, 597 So.2d 246 (Ala. Crim.

    App. 1992)........................    18

*Dill v. State*, 600 So. 2d 343, 353-54

    (Ala. Crim. App. 1991), *aff'd*, 600 So.

    2d 372 (Ala. 1992), *cert. denied*,

    507 U.S. 924, 113 S.Ct. 1293,

    122 L.Ed.2d 684 (1993)............    9

*Hardley v. State*, 766 So.2d 154 (Ala. 1999).    14

*Miller v. State*, 290 Ala. 248, 275 So.2d 675

    (1973).............................    8

*Patterson v. State*, 538 So.2d 44 (Ala. Crim.

    App. 1988).......................    14

*Powell v. State*, 576 So.2d 1285, 1288

    (Ala. Crim. App. 1991)............    8

*R.D.W., Ex parte*, 773 So.2d 426 (Ala. 2000).    21

*Scott v. State*, 728 So.2d 164 (Ala. Crim.

    App. 1997)........................    16

## TABLE OF AUTHORITIES (cont'd)

<u>Authority</u>:                                                    <u>Page No(s)</u>:

**Cases:**

*Womack v. State*, 462 So.2d 1020

    (Ala. Crim. App. 1984)..............        18


**Statutes and Other Authorities:**

Ala. Code § 13A-4-2(a)(1975)............         10,20

Ala. Code § 13A-4-2(c)(1975).............         16

Ala. Code § 13A-7-2(1975)................         20

Ala. Code § 13A-7-3(1975)................         20

Ala. Code § 13-7-5(a)(1)(1975)...........         10

13 Am.Jur.2d Burglary § 29 (1964)........         13

v

## STATEMENT OF THE CASE

On or about August 5, 2002, a Chambers County Grand Jury returned in indictment against, Christopher McCullough and co-defendant Billy Norris, alleging they had committed the offense of Attempted Burglary in the First Degree, stemming from allegations that they had attempted to enter the dwelling of the victims while armed with a pistol with the intent to commit a crime therein.  C.  1-2, 37.

On November 13 and 14, 2003, a jury trial was held on the indictment against Mr. McCullough.  On November 13, 2003, the state rested and Mr. McCullough moved for a judgment of acquittal.  R.  173.  The motion was denied by the trial court.  R. 174.  On the same date, following the close of the defense case, Mr. McCullough renewed his motion for judgment of acquittal.  R. 199.  See also 214-216.  The motion was denied.  R. 199, 216.  On November 13, 2003, Mr. McCullough requested the trial court instruct the jury on the lesser included charges of attempted criminal trespass in the first degree and criminal trespass in the second degree.  R. 199.  The trial court refused both instructions. R. 203-204.

Following closing arguments on November 14, 2003, the

1

trial court gave the jury the instructions on the law in the case. R. 221-243. The requested jury instructions were not included nor were they substantially covered by other charges. Id. Following the charge, and prior to the jury retiring for deliberations, Mr. McCullough again registered his objections to the charges. R. 243.

On November 14, 2003, the jury returned a verdict of guilty as charged in the indictment against Mr. McCullough. C. 21, R. 244. On November 14, 2003, the trial court found Mr. McCullough guilty, based on the jury's verdict. R. 245. On January 15, 2004, the trial court sentenced Mr. McCullough to a term of forty years imprisonment in the state penitentiary. RR. 16. C. 28. On February 17, 2004,[1] Mr. McCullough filed a Motion for New Trial, alleging the trial court erred in failing to grant his motion for judgment of acquittal as the evidence was insufficient to support a verdict, that the evidence failed to corroborate the accomplice's testimony, and that the failure to give the requested instructions constituted reversible error. C. 29-35. On March 10, 2004, the trial court denied the motion.

---

[1] For the record, February 15, 2004 fell on a Sunday, and February 16, 2004 was a state holiday – President's Day. Ala. R. Crim. P. 24.4.

C. 36.  On April 10, 2004, Mr. McCullough timely filed his Notice of Appeal.  C. 39.  This appeal follows.

## STATEMENT OF THE ISSUES

I.   VERDICT WAS CONTRARY TO THE LAW AND THE WEIGHT OF THE
     EVIDENCE.

II.  CORROBORATION OF CO-DEFENDANT'S TESTIMONY NECESSARY TO
     UPHOLD CONVICTION WAS NOT PRESENTED.

III. TRIAL COURT ERRED BY FAILING TO INSTRUCT JURY ON LESSER
     INCLUDED CHARGE OF CRIMINAL TRESPASS.

## STATEMENT OF THE FACTS

On or about March 19, 2002, Ola Mae ("Pearl") Trammell observed two individuals outside the home of Judith and Charles Gragg in Chambers County, Alabama. The individuals were described as wearing a ski mask and bandanna, respectively, obscuring their faces. Ms. Trammell did not see any weapon. She alerted Judith and Charles Gragg and the police were called. R. 80-82. Judith Gragg saw one individual run through her yard and observed police running in that direction in the same moment. She saw no weapon. Ms. Gragg stated no intruder attempted to enter her home or took any property. R. 90,94. Charles Gragg did not observe the individuals but stated no intruder attempted to enter the home or took any property. R. 104-105. He further stated his property was posted against trespassers. R. 103.

Billy Norris, the co-defendant in this case, testified that he and Mr. McCullough traveled to the property and parked near a cemetery and entered the Gragg's property while McCullough was armed with a pistol. Norris testified that he observed an individual inside the home and alerted McCullough. Norris testified that he ran and McCullough followed him. R. 127-135. It is undisputed neither gained entry nor took or

5

attempted to take any personal property of the Graggs.

Robbie Bettis testified that he stopped Mr. McCullough and Billy Norris while they were driving in McCullough's vehicle in the vicinity of the Gragg residence. R. 110. Richard Carter testified that a search of the vehicle revealed the presence of several firearms. R. 157. The guns were not located in the vehicle until some twenty minutes into the search. R. 171. No officer observed Mr. McCullough on the Gragg's property. Richard Carter testified that McCullough confessed to entering the property of the Graggs' while armed with a pistol and with the intent to commit a crime inside the residence. R. 166-167. The statement by McCullough set out that he voluntarily left the property without attempting to gain entrance because someone was inside the residence. Id. He admitted McCullough would not sign the statement that Carter wrote. R. 163,167.

Mr. McCullough states that Norris wanted to go to the Gragg's property to commit a crime, and that McCullough entered the Gragg's property but he was not armed, nor was Norris, and that neither attempted to gain entrance to the home or take any personal property belonging to the Graggs. R. R. 177-180.

## SUMMARY OF ARGUMENT

The jury's verdict was contrary to the law and the evidence. The state failed to make a prima facie case as they proved no overt act on the part of Mr. McCullough as necessary to show the attempted burglary in the first degree.

No competent evidence was presented that shows that Mr. McCullough was in possession of a firearm while attempting to enter the dwelling of the Graggs in order to commit a crime. No corroborating evidence of any kind was presented sufficient to allow the verdict to stand, based solely on the testimony of Billy Norris, an accomplice.

The trial court committed reversible error by failing to give requested instructions on the lesser included offenses of attempted criminal trespass in the first degree and criminal trespass in the second degree, as required by law.

## ARGUMENT

## STANDARD OF REVIEW

In reviewing the sufficiency of the evidence, this Court must review the evidence in the light most favorable to the prosecution. The standard of review is whether legal evidence was presented to the jury from which the jury could by fair inference find the defendant guilty beyond a reasonable doubt.

*Powell v. State*, 576 So.2d 1285, 1288 (Ala. Crim. App. 1991).

This Court will review the issue of whether there is sufficient corroboration of the testimony of an accomplice by "eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense." *Miller v. State*, 290 Ala. 248, 275 So.2d 675 (1973).

This Court examines the trial court's failure to give a proposed jury instruction and will reverse if the requested instruction "(1) was correct, (2) was not substantially covered by the court's charge, and (3) concerned a point in the trial which was so important that the failure to give the instruction seriously impaired the defendant's ability

8

to defend himself. United States v. Sans, 731 F.2d 1521,
1529-30 (11th Cir. 1984), cert. denied, 469 U.S. 1111, 105
S.Ct. 791, 83 L.Ed.2d 785 (1985); Connolly[v. State, 602 So.
2d 443 (Ala. Crim. App. 1990).]" *Dill v. State*, 600 So. 2d
343, 353-54 (Ala.Crim.App. 1991), *aff'd*, 600 So. 2d 372
(Ala. 1992), *cert. denied*, 507 U.S. 924, 113 S.Ct. 1293, 122
L.Ed.2d 684 (1993).

I.    **VERDICT WAS CONTRARY TO THE LAW AND THE WEIGHT OF THE EVIDENCE.**

**THE STATE FAILED TO PROVE AN OVERT ACT.**

In this case, Christopher McCullough was indicted and tried on a charge of attempted burglary in the first degree. Burglary in the first degree, as relevant in this matter, is defined as:

> (a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
> (1) Is armed with explosives or a deadly weapon;

Ala. Code § 13-7-5(a)(1)(1975). "A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense." Ala. Code § 13A-4-2(a)(1975).

Thus, in order to prove burglary in the first degree, the State must prove that the defendant entered or unlawfully remained in the dwelling of another with the intent to commit a crime while armed with a deadly weapon. Ala. Code § 13A-7-5 (1975). In order to prove the crime of attempt, the state must prove that the defendant committed any overt act towards the commission of the offense. Ala. Code § 13A-4-2 (1975).

10

During the trial of the case, the evidence showed that
Ms. Ola Mae ("Pearl") Trammell observed a man outside the
window of Mike Gragg's home who appeared to have a bandana
over his face. R. 80. She warned Mr. and Mrs. Gragg.
Mrs. Gragg reported seeing one person running through the
back yard away from the home seconds later. R. 90. No
witness testified that either Mr. McCullough or his co-
defendant entered the home or attempted to enter the home.
See e.g., R. 94, 105. No witness in the home testified
that he or she saw a weapon in any of the assailants' hands.
See R. 85, 94, 105.

The police responded to a 911 call immediately made by
Mr. Gragg within one minute and took up what they described
as "hot pursuit" of the individuals through the yard. R.
119. The defendant and co-defendant Billy Norris were
stopped in an area behind the Gragg home in the defendant's
automobile. See e.g., R. 110, 124. After some 20 minutes
of searching, the police discovered two guns in the rear
trunk area of the car. R. 171. The co-defendant testified
that the defendant was armed when he approached the Gragg
home, but both he and the defendant ran when they heard
sirens. R. 130-134.

The only evidence that supports a conviction was the

11

testimony of the co-defendant and the unsigned statement of the defendant.  The defendant testified that he was trying to stop Billy Norris from kicking in the front door of the home and committing a crime, and was approaching the home to stop Norris from committing any crime on the property.  R. 178-180, 188-189.  He denied being armed.  R. 197-198.  He denied making a statement to police that he approached the home while armed and left when he saw people were inside the home.  R. 193-194.

Following the state's evidence, and again following the defendant's case, the defendant moved for a judgment of acquittal, based on the state's failure to prove a prima facie case.  R. 172, 199.  The motions were denied.  R. 173, 199.

The conviction cannot stand while supported only by the unsigned statement of defendant and the testimony of the co-defendant, a convicted liar who received a favorable plea bargain in exchange for his testimony, and who repeatedly made self-serving statements regarding his involvement in the offense.  See e.g., R. 137-139, 143-145.

The only credible evidence of an overt act is that Christopher McCullough was present on the Gragg's property while wearing a ski mask, and left the area without

12

attempting to gain entry to the home.  To sustain a
conviction for attempted burglary in the first degree,
justice requires more than mere presence with a ski mask.
An attempted burglary is defined in 13 Am.Jur.2d Burglary §
29 (1964) as:

> an act done with the intent to effectuate a
> burglary, carried beyond mere preparation to
> commit it but falling short of its actual
> commission. An indictable attempt thus consists of
> two important elements: (1) an attempt to commit
> burglary, and (2) a direct ineffectual act done
> toward its commission.

In other words, an overt act is requires the direct and
ineffectual act done towards its commission.  The defendant
in this case, according to all testimony and evidence, did
not commit a "direct, ineffectual" act by the mere presence
on the property while wearing a ski mask.

The only charge supported by the evidence is that of a
criminal trespass in the second degree, or perhaps that of
attempted criminal trespass in the first degree.  As the
trial court refused the charges, it was in error and the
jury's verdict cannot be sustained.  This Court must reverse
the conviction and sentence and remand with instructions to
grant Mr. McCullough's motion for judgment of acquittal.

## II.  CORROBORATION OF CO-DEFENDANT'S TESTIMONY NECESSARY TO UPHOLD CONVICTION WAS NOT PRESENTED.

In this case, the only evidence that defendant committed the crime of attempted burglary in the first degree came in the form of testimony from co-defendant Billy Norris.  The conviction cannot stand upon this testimony alone.

> 'The test for determining whether there is sufficient corroboration of the testimony of an accomplice consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense.' Tarver v. State, 500 So.2d 1232 (Ala.Cr.App. 1986), affirmed, 500 So.2d 1256 (Ala. 1986), cert. denied, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987), citing, Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973) (emphasis supplied). Garrison v. State, 520 So.2d 219 (Ala. Crim. App. 1987).

Patterson v. State, 538 So.2d 44 (Ala. Crim. App. 1988).

See also Hardley v. State, 766 So.2d 154 (Ala. 1999), discussing Ala. Code Section 12-21-222 and reversing the conviction.

By examining the evidence in light of this test, the only facts that the state could deduce was that:

1.  Christopher McCullough was on the property of Mike

14

and Judith Gragg.  R. 178-180.  This information cannot be deduced at all without the testimony of the defendant.

2.  Christopher McCullough was wearing a ski mask at the time of the offense (or, at least, during the state's case, that he was carrying a ski mask that was similar to one seen by the occupants on a person in the yard).  R. 81, 121-122, 189.

3.  Christopher McCullough did not take any act towards gaining entry to the home or take any act at all other than walking on the property.  See entire record without testimony of Billy Norris.

4.  Christopher McCullough left the scene without taking property or attempting entry.  See e.g., R. 94, 105.

5.  That after Mr. McCullough was stopped, several guns were found in his car.  R. 157.

A brief examination of these facts show that no sufficient corroboration exists upon which the court can rest a verdict of guilty to the charge of attempted burglary in the first degree.  Only Billy Norris states that Chris McCullough entered the Gragg's property while armed with a pistol.  Only Billy Norris states that Chris McCullough intended to break into the Gragg's property to commit the crime of theft.

15

Even if the court finds that the unsigned statement of Christopher McCullough was properly admitted and can be used in this test, it adds only the following:

6.   That Christopher McCullough entered the property with a gun and with the intent to enter the home of Mike and Judith Gragg to commit a theft but voluntarily left the property upon learning that the home was occupied, thus abandoning the attempt.

Under the facts as set out above, the conviction must be set aside as the unsigned statement suggests abandonment of the offense, which is a complete defense.   See Ala. Code §13A-4-2(c)(1975).  Without the uncorroborated testimony of Billy Norris, the state cannot refute the defense of abandonment.  *Id.*  Further, without the statement of the defendant and the statement of Billy Norris, only the defendant's presence suggests involvement.  "[T]he accused's proximity itself, in most cases, is not enough evidence for corroboration."  *Scott v. State*, 728 So.2d 164 (Ala. Crim. App. 1997).

Very like the *Hardley* case cited above, when the court reviews the evidence without the self serving testimony of Billy Norris, there is not corroboration to state that

Defendant committed the offense, sufficient to support a conviction.  The court must grant the Defendant's Motion for New Trial, and place the case back on the jury docket for the next available trial setting.

## III.  TRIAL COURT ERRED BY FAILING TO INSTRUCT JURY ON LESSER INCLUDED CHARGE OF CRIMINAL TRESPASS.

The Defendant requested the court charge the jury on the lesser included charges of Attempted Criminal Trespass in the First Degree and Criminal Trespass in the Second Degree.  The court refused, stating that the defendant's testimony, that he was present on the Gragg's property to prevent a crime from occurring, negated a finding of criminal trespass.  R. 204.

Whether or not a crime is a lesser included offense of a charged offense must be examined on a case by case basis. *Aucoin v. State*, 548 So.2d 1053, 1057 (Ala. Crim. App. 1989).  Clearly, under the facts of this case, both of the requested charges of criminal trespass are warranted.  The facts showed that the defendant entered the property of Mike and Judith Gragg while wearing a ski mask but did not enter or attempt to enter the home, and instead left the property.

17

The facts showed that the property was posted against trespassers.  See R. 104.

In *C.P. v. State*, 597 So.2d 246 (Ala. Crim. App. 1992) this Court found that Criminal Mischief in the Third Degree was a lesser included offense of Attempted Burglary in the Third Degree where the victim stated that the defendant cut the screen to her window but then left, and later admitted to her that he had cut her screen.  Given those facts, the *C.P.* Court found that the trial court property found the defendant guilty of criminal mischief in the third degree.

Similarly, in this case, the facts supported a jury finding that the defendant was on the property unlawfully, regardless of his intentions, and the trial court erred in refusing the charge on the lesser included offense.  Indeed, it is the intent element that distinguishes the offense of burglary from that of criminal trespass.

In *Womack v. State*, 462 So.2d 1020 (Ala. Crim. App. 1984), this Court set out that:

> It is well established under Alabama law that an individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment when there is a reasonable theory from the evidence to support his position. Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973); Chavers v. State, 361 So. 2d 1106 (Ala. 1978); Staggs v. State, 51 Ala. App. 203, 283 So.2d 652 (Ala. Crim.

18

App. 1973).

In the *Womack* case, the defendant was found crawling out of a window at a school where an air conditioner was discovered missing at 1:45 a.m.  Although the court stated that the facts would support a finding of intent to steal, it went on to state: "since neither the missing air conditioner nor any other property from the school was ever traced to his possession, there is a lack of evidence, which is consistent with guilt only of the lesser offense."  *Id.* The *Womack* court reversed the conviction for burglary and ordered a new trial.

A strikingly similar fact pattern emerges in this case. Mr. McCullough testified that he was on the Gragg property, that he did not have permission to be there, and that he did not have an intent to go into the home or steal anything. The elements of criminal trespass encompass this set of facts, and it was clear error in refusing to instruct the jury on the lesser included offenses.  His presence on the property, which is posted, clearly constitutes a trespass.

Alabama Code Section 13A-7-2 governs the offense of criminal trespass in the first degree:

19

> (a) A person is guilty of criminal trespass in the
> first degree if he knowingly enters or remains
> unlawfully in a dwelling.

*Id.*   As set out earlier, "[a] person is guilty of an

attempt to commit a crime if, with the intent to commit a

specific offense, he does any overt act towards the

commission of such offense."  Ala. Code § 13A-4-2(a).

Alabama Code Section 13A-7-3 sets out the crime of

criminal trespass in the second degree:

> (a) A person is guilty of criminal trespass in the
> second degree if he knowingly enters or remains
> unlawfully in a building or upon real property
> which is fenced or enclosed in a manner designed
> to exclude intruders.

*Id.*

It simply makes no sense to state that sufficient

evidence existed from which the jury could infer that Mr.

McCullough entered the property of the Gragg's unlawfully or

attempted to enter their dwelling unlawfully, with the

intent to commit a crime therein, but insufficient evidence

existed from which the jury could infer that Mr. McCullough

entered the property of the Gragg's unlawfully or attempted

to enter but without the intent to commit a crime therein.

Mr. McCullough is clearly entitled to a jury

instruction for attempted criminal trespass in the first

degree and criminal trespass in the second degree which was requested and refused improperly.

Where, as here, the defendant's requested jury instruction "(1) was correct, (2) was not substantially covered by the [trial] court's charge, and (3) concerned a point in the trial which was so important that the failure to give the instruction seriously impaired the defendant's ability to defend himself" then such failure by the trial court in refusing to give the instruction constitutes reversible error. *Ex parte R.D.W.*, 773 So.2d 426 (Ala. 2000)(citing *Dill v. State*, 600 So. 2d 343, 353-54 (Ala. Crim. App. 1991), *aff'd*, 600 So. 2d 372 (Ala. 1992), *cert. denied*, 507 U.S. 924 (1993)).

Such a refusal constitutes reversible error. This Court must reverse the conviction and sentence imposed and remand this matter to the trial court with instructions to place this case on the next available jury trial docket.

21

**CONCLUSION**

Mr. McCullough's conviction for attempted burglary in the first degree and subsequently imposed sentence of forty years imprisonment must be reversed.  The verdict was contrary to the law and the evidence presented. The State failed to meet their burden of proof.  The requisite elements of attempted burglary in the first degree were never proven by the State.  The State further presented insufficient evidence to corroborate the testimony of the co-defendant, Billy Norris, and thus the conviction cannot stand.  The trial court erred in failing to instruct the jury on the lesser included charges of attempted criminal trespass in the first degree and criminal trespass in the second degree as requested, and as required by law.  The error mandates reversal.

**ORAL ARGUMENT IS REQUESTED**

## SUMMARY OF RULINGS AND ACTIONS
## ADVERSE TO MR. HEARD

| Record Page No. | Summary |
|---|---|
| R.   173 | Trial court denies motion for judgment of acquittal |
| R.   199,216 | Trial court denies renewed motion for judgment of acquittal |
| R.   205,206,243 | Trial court refuses to give instruction on criminal trespass |
| R.   221-243 | Trial court's charge to the jury, omitting lesser included charge of criminal trespass. |
| R.   244 | Jury's verdict of guilt. |
| R.   245 | Trial court enters conviction. |
| RR.  16 | Trial court sentences Mr. McCullough to forty years imprisonment. |

23

# CERTIFICATE OF SERVICE

**CHRISTOPHER MCCULLOUGH,**

        **Appellant,**

**STATE OF ALABAMA,**

        **Appellee.**

TO:  The Clerk of the Court of
Criminal Appeals of Alabama

**CR. NO.: 03-1103**

Clerk's certificate of
completion:June 1, 2004

I HEREBY CERTIFY that I have this date served a copy of the foregoing brief and argument on each of counsel of record for appellee via United States Mail, First Class, postage prepaid on this the 6th day of July, 2004.

Pursuant to Rule 34(a):

[   ] I do not desire oral argument.

[X] I have demanded oral argument and have so indicated on the cover of my brief.

                            Kyla Groff Kelim (GRO014)
                            Attorney for Appellant

Of Counsel:
ALEC BROWN & ASSOCIATES, P.C.
217 Madison Street
P.O. Box 1977
Alexander City, AL 35011
(256) 409-9001

CS-1

No. CR-03-1103

In the *COURT of CRIMINAL APPEALS
of ALABAMA*

◆

CHRISTOPHER MCCULLOUGH,

Appellant,

v.

STATE OF ALABAMA,

Appellee.

◆

*On Appeal From the Circuit Court of
Chambers County (CC-02-318)*

**BRIEF OF APPELLEE**

Troy King
*Attorney General*

P. David Bjurberg
*Assistant Attorney General*

Marc A. Starrett
*Assistant Attorney General*
Counsel of Record*

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7300*

August 3, 2004


EXHIBIT
1C

## STATEMENT REGARDING ORAL ARGUMENT

The State of Alabama does not request oral argument, because the issues before this Court are adequately briefed and the Court's decisional process would not be significantly aided by oral argument. Ala.R.App.P. Rule 34 (a)(3).

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT......................... i

TABLE OF CONTENTS....................................... iii

TABLE OF AUTHORITIES.................................... iv

STATEMENT OF THE CASE................................... 1

STATEMENT OF THE ISSUES................................. 3

STATEMENT OF FACTS...................................... 4

I.  McCullough's attempted burglary at 3622
Country Club Road....................................... 4

II.  McCullough's denial of his actions.................. 10

III. The jury's verdict; the trial court's adjudication
of guilt and sentencing................................. 13

STANDARDS OF REVIEW..................................... 15

SUMMARY OF THE ARGUMENT................................. 18

ARGUMENT

I. The Trial Court Did Not Err In Submitting
McCullough's Attempted Burglary Charge To The Jury....... 20

A. The State presented sufficient evidence to support
McCullough's conviction................................. 21

B. The jury's verdict was not against the weight of
the evidence............................................ 24

## TABLE OF CONTENTS (CONT'D)

II. McCullough Did Not Preserve For Appellate
Review His "Lack Of Corroborative Evidence" Argument..... 27

III. McCullough Did Not Preserve For Appellate Review
His Argument That The Trial Court Erred In Refusing His
Requested Instructions Regarding The Offenses Of Attempted
First-Degree Criminal Trespass And Second-Degree Criminal
Trespass..........................................................35

CONCLUSION......................................................... 36

CERTIFICATE OF SERVICE............................................. 37

## TABLE OF AUTHORITIES

**Cases**

Bennett v. State, 584 So. 2d 869 (Ala. Crim. App. 1990)..26

Brown v. State, 645 So. 2d 309 (Ala. Crim.
   App. 1994) ........................................ 27

Buford v. State, CR-03-0042 2004 WL 595332 (Ala. Crim.
   App. 2004) ........................................ 32

Cauley v. State, 681 So. 2d 1105 (Ala. Crim.
   App. 1996) ........................................ 32

Chastang v. State, CR-00-0130, 2001 WL 1137735
   (Ala. Crim. App. 2001) ............................ 25

Chestang v. State 837 So. 2d 867 (Ala. Crim. App. 2001).. 25

Crowder v. State, 448 So. 2d 507 (Ala. Crim. App. 1984)..28

Douglas v. State, CR-03-0211, 2004 WL 1178366
   (Ala. Crim. App. 1993)............................. 25

Harris v. State, 745 So. 2d 940 (Ala. Crim.
   App. 1999) ..................................... 22, 29

Johnson v. State, 820 So. 2d 842 (Ala. Crim.
   App. 2000) ........................................ 29

McIntyre v. State, 571 So. 2d 364 (Ala. Crim. App. 1990). 21

Miller v. State, 673 So. 2d 819 (Ala. Crim.
   App. 1995) ........................................ 32

Northeast Alabama Regional Medical Center v. Owens, 584
So. 2d 1360 (Ala. 1991)............................... 32

Popwell v. State, 523 So. 2d 515 (Ala. Crim.
   App. 1987) ..................................... 23-24

<u>Underwood v. State</u>, 834 So. 2d 819 (Ala. Crim.
  App. 2001) ............................................ 26

<u>Ward v. State</u>, 376 So. 2d 1112 (Ala. Crim.
  App. 1986) ............................................ 28

<u>Williams v. State</u>, 497 So. 2d 1142 (Ala. Crim.
  App. 1987) ......................................... 23-24

<u>Withee v. State</u>, 718 So. 2d 684 (Ala. Crim.
  App. 1998) ............................................ 32

<u>Zumbado v. State</u>, 615 So. 2d 1223 (Ala. Crim.
  App. 1993) ...................................... 21, 25

A.R.Crim.P.

Rule 20.2(a)......................................................21

Rule 20.3.................................................... 21

Rule 21.3.................................................... 31

Ala. Code (1975)

§ 13A-7-2................................................. 33

§ 13A-7-5................................................. 22

§ 13A-4-2................................................. 22

Ala.R.Civ.P

Rule 51.................................................. 32

v

## STATEMENT OF THE CASE

Christopher McCullough appeals from his November 14, 2003 conviction and corresponding January 15, 2004 sentence on the charge of attempted burglary; Chambers County Circuit Court Judge Ray D. Martin presided over McCullough's jury trial and subsequent sentencing. (C. 28, R. 1, Sentencing R. 1)[1] McCullough was indicted on the charge of attempted burglary by the Fall 2002 session of the Chambers County Grand Jury. (C. 1) The trial court sentenced McCullough to forty years' imprisonment, and directed him to pay court costs, appointed attorney fees, a medical services reimbursement, and a $100 victims' compensation fund assessment. (C. 28, Sentencing R. 13-16) In sentencing McCullough, the trial court noted that the March 19, 2002 attempted burglary of a home by McCullough and codefendant Billy Ralph Norris, committed while masked and armed during "broad daylight hours," "is about as offensive as it gets to the [sensibility] of a civilized society." (Sentencing R. 14) "Masks, duct tape, guns in

---

[1]The Clerk's Record shall be referenced as (C. __). Because the trial and sentencing hearing transcripts are not sequentially numbered, the trial transcript shall be referenced as (R. __), and the sentencing hearing transcript shall be referenced as (Sentencing R. __).

broad open daylight [...] I think the only thing that
prevented this from being a true tragedy, even more of a
tragedy than it is, that being the deaths of [a] person or
persons, either the defendants, the occupants, or both, I
think, that the only thing that prevented that in this
case, was the distant wail of a siren." (Sentencing R. 14)

McCullough moved for a new trial, which the trial court
denied. (C. 35, 36) McCullough then appealed to this
Court. (C. 39)

## STATEMENT OF THE ISSUES

1. Did the trial court err in submitting McCullough's attempted burglary charge to the jury?

A.  Did the State present sufficient evidence to support McCullough's conviction?

B.  Was the jury's verdict against the weight of the evidence?

2.  Did McCullough preserve his "lack of corroborative evidence" argument for appellate review?

3.  Did McCullough preserve his argument that the trial court erred in refusing his requested instructions regarding the offenses of attempted first-degree criminal trespass and second-degree criminal trespass?

**STATEMENT OF FACTS**

I.  **McCullough's attempted burglary at 3622 Country Club Road**

On the "beautiful spring morning" of March 19, 2002, Ola Pearl Trammell worked as a housekeeper for Mike and Judith Gragg, who resided at 3622 Country Club Road in Lanett, Alabama. (R. 79-80, 86, 96-97, 98) The Graggs were at home and preparing to leave for a family trip, and Trammell was ironing at their home that morning. (R. 80, 86, 97) While ironing, Trammell glanced through a window, and saw two black men running and crouching near the front of the home. (R. 80) Both men had concealed their faces; one of the men wore a dark blue or black ski mask, and the other wore a blue and white bandana. (R. 81) Trammell could see that both men were black, because their arms were uncovered. (R. 80, 85) Mike Gragg had just stepped outside to smoke a cigarette, and Trammell hurriedly called him inside, telling him that she "just saw two men with masks on their face go around the house." (R. 81, 97-98) Gragg came inside and telephoned 911, retrieved and loaded a shotgun, and told Trammell to go to a bedroom with his wife. (R. 82, 98)

Judith Gragg and Trammell went to the bedroom and watched as the men ran past a barn and toward a nearby cemetery; the cemetery is approximately 300 yards from the Gragg home. (R. 82-83, 89-90, 102-103) Mike Gragg believed that the men would kick in the door, and he stood at the door fully prepared to "shoot whoever came through the door." (R. 99) "[W]ithin a very short time," the police arrived with guns drawn and advanced toward the cemetery. (R. 83, 90-92, 102)

Lanett Police Department Lieutenant Robbie Bettis received a call regarding a possible break-in on Country Club Road; he and several other officers responded within approximately three minutes. (R. 106-107, 108, 113-114) Lieutenant Bettis drove toward the cemetery, and saw "something shining through the woods[;]" it was a car occupied by two black males. (R. 110) Lieutenant Bettis activated his lights while approaching the moving car, and the car stopped. (R. 110-111) He called other officers for assistance, and several officers arrived at the scene within seconds. (R. 111, 114) The defendant, Christopher McCullough, was driving the car. (R. 112) Codefendant

Billy Ralph Norris was McCullough's passenger. (R. 134, 135)

Lanett Police Department Detective Lincoln Whaley and Officer Steven Wood answered a call to the Gragg residence; they were advised that there were "two guys crouched down under the window with a mask on[;]" upon their arrival, Mike Gragg informed them that the men had run toward the barn. (R. 116, 118-119, 120) During the search of the barn area, they received a call informing them that Lieutenant Bettis had stopped a vehicle in the cemetery; they then drove to the cemetery. (R. 120) Upon his arrival, Detective Whaley found the two men secured by Lieutenant Bettis and another officer; in searching McCullough, Detective Whaley found a blue ski mask in his back pocket. (R. 121-122) Inside McCullough's car, the police found a blue bandana, gloves, a roll of duct tape, and two pistols hidden in a compartment behind its rear seat. (R. 156-157, 170-171)

Codefendant Billy Ralph Norris pleaded guilty to the offense of attempted burglary arising from this incident; he testified at trial regarding the circumstances of the attempted burglary. (R. 124, 125, 138) Norris described

how he met McCullough, a longtime friend, in Lanett at a Kroger grocery store after McCullough had taken his girlfriend to Lafayette for a food stamp interview, and there "had a conversation[;]" McCullough told Norris that he "had seen a house out on Country Club Road that we should check out[,]" and asked him to get in the car. (R. 126, 127) McCullough informed Norris that it "didn't look like no one was at the house." (R. 130) When Norris entered McCullough's car, he saw a roll of duct tape; when Norris asked him about the tape, McCullough told him "we probably need this." (R. 127-128, 131, 136) They drove to the cemetery near the Gragg house, and parked the car behind some brush. (R. 128) Norris donned a blue bandana and gloves, and McCullough wore a ski mask. (R. 129-130, 131, 143) McCullough placed a chrome Beretta nine-millimeter pistol into the front of his pants. (R. 130, 136) Their "intention was probably to burglarize the house." (R. 130-131) Norris and McCullough then walked through the woods to the Gragg home. (R. 130) With identities concealed and fully armed, McCullough and Norris then surrounded the home and checked its windows, when they saw Trammell through one of windows:

"NORRIS:    We went up to the house.

"...

"Got up to the house [sic] I went to one side
of the house, and he went to one side of the
house.   We decided we'd look in the window and
see if we see anybody.

"...

"The side of the house I was on I didn't see
anyone.   I didn't see anyone on the side of
the house I was on.

"...

"I went to the front, and I met him.   On the
side of the house he had said he had checked
the window and wasn't nobody in the house.
But it was a window on the back side of the
house that was kind of high.   He couldn't see
in it. The height I am I'm taller than him.   I
looked into it.

"...

"When I looked into it I seen a black woman
with her back turned to me with a yellow
blouse and folding clothes.   Naturally I
thought she probably worked there or lived
there or whatever.   But I knew someone was in
the house.

"...

"After then I told him, I said, man, somebody
was in the house.   We need to leave, get out
of here.   He was like, well, this house right
here is too good.   We need to get this
because, you know, he had a pistol and this
and that...

8

"I had the conversation with him that we
should leave here.  He said the house was too
good.  We need to get this and that.  I didn't
really want to go in the house. We were like
getting into a conversation out there.

"...

"Talking back and forth.  Then I said I think
I heard somebody say they seen somebody.

"...

"Then I went in front of the house.  I hear
like motors revved up coming through the
driveway because it's a long driveway from the
road.  I thought it was the police.

"...

"I took off running.  He took off behind me."

(R. 132-134)  Norris and McCullough ran toward their hidden

car; while running, McCullough tripped and dropped his

pistol, and Norris picked it up.  (R. 134) They entered the

car and attempted to drive away, but were then apprehended

by the police.  (R. 135)

    Following the arrest of Norris and McCullough, Chambers

County Sheriff's Department Chief Investigator Jeff

Blackstone interviewed McCullough at the Lanett Police

Department.  (R. 145-146)  After McCullough was informed of

his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86

S. Ct. 1602, 16 L. Ed. 2d 694 (1966), McCullough indicated

that he understood those rights and wished to speak. (R. 147-149, 167-168) He then gave the following statement, which, after it was transcribed, he read and stated was true, but refused to sign (R. 166, 167):

> "Today I picked him up at my house. I had been to Lafayette to the food stamp office. I was headed back to Lafayette when we saw the house. We stopped and parked down at the cemetery. When we got out I had a mask and the 9 mm. Billy had a bandana and gloves. He left the duct tape in the car. We went through woods to the house. When we got to the house Billy saw a lady inside folding clothes. He told me. And I said let's go. He said you got a gun. You might as well go on and do it. I told him no. Then we was walking back towards the woods when we heard the police car coming up. Then we ran through the woods to the car."

(R. 166)

Mike Gragg did not give Christopher McCullough or Billy Norris permission to enter or attempt to enter the Gragg home; the property is posted with signage stating "no trespassing." (R. 103, 104)

## II. McCullough's denial of his actions

Following the presentation of the preceding evidence by the State, McCullough testified on his own behalf, asserting that he did not attempt to commit burglary, but instead foiled Norris's attempt to burglarize the Gragg

home.  (R. 174, 176, 178-179) He stated that, on the
Saturday night preceding the attempted burglary, he and
Norris were at the Soul Inn club in Tuskegee and discussed
"some activity that he wanted me to do[,]" "like he wanted
to be a member of a gang really what it was."  (R. 177,
184)  McCullough admitted that, after taking his girlfriend
to a food stamp interview in Lafayette, he met Norris at
the grocery store and then drove to the cemetery; he
asserted, however, that Norris stole the duct tape from the
store, and that it was Norris's notion to rob the Gragg
home.  (R. 177-178, 183)  When Norris saw Trammell folding
clothes, McCullough "said okay, just go[,]" but Norris
"said no, want to do something gangster."  (R. 178)
McCullough insisted that he had no intention to burglarize
the Gragg home, but only attempted to stop Norris from
doing so:

> "MCCULLOUGH:  Billy Norris had a bandana
> around his face.  He seen the woman from the
> back side.  He went around the front side of
> the house.  So we went around the front side.
> He tells me he still going to kick the door
> in.  The honest God's truth, he told me he was
> going to kick the door in.  I asked him what
> he going to do.  He said it's gangster.  If I
> do enough gangster if I kick the door.  I said
> put on death row.  I talked him out of it.
> Only part I talked him out of it.  I told him
> no.

"...

"Well, by me having influenced him not to do
it he said the woman (inaudible).  I said she
probably see you, too.  I going to do this.  I
said, man, police coming.  I bribe him.  I bet
you 15 minutes the police coming.  Let's see.
Went back to the edge of the woods and laid
down.  Before we know it here a car come up
the driveway.  We got up and ran back through
the woods.

...

"DEFENSE COUNSEL:  What were you intending to
do at that house?

"MCCULLOUGH:  I observed him do something
foolish.

"DEFENSE COUNSEL:  What?

"MCCULLOUGH:  I said I was really there.  I
observed him doing something foolish, stupid,
really say for real."

(R. 178-179, 180)  McCullough further testified as to his

purported intention to prevent the burglary when directly

questioned by the trial court.  (R. 197-198)

McCullough testified that the only reason that he went

to the house was to prevent the "situation" from "getting

out of hand."  (R. 188)  He wore a mask only because he

"didn't want anybody to see [his] face."  (R. 189)

McCullough denied having carried a gun or having guns in

his car; he did not know how the guns came to be in his

12

car.  (R. 179-180, 186)  McCullough insisted that Norris's
testimony was false, and that he (McCullough) had not given
a statement to the police; "everything I told him we
conversated about he switched around."  (R. 182)  He
refused to sign his statement to the police because the
statement "wasn't statutory of my rights. It wasn't true."
(R. 182) McCullough admitted to having been previously
convicted of receiving stolen property in 1993, and first-
degree burglary and second-degree theft in 2002.[2]  (R. 181)

### III. The jury's verdict; the trial court's adjudication of guilt and sentencing

Following the presentation of the above-stated
evidence, the jury found McCullough guilty of the indicted
offense of attempted burglary; the trial court adjudicated
him guilty in accordance with that verdict.  (R. 244, 245)
The trial court sentenced McCullough to forty years'

---

[2]On September 19, 2003, this Court affirmed by
memorandum opinion McCullough's convictions of first-degree
burglary and second-degree theft of property, see
Christopher McCullough v. State, CR-02-0943 (Ala. Crim.
App. Sept. 19, 2003), and, following the Alabama Supreme
Court's denial of certiorari review, entered a certificate
of judgment on the convictions on December 12, 2003.
Although substantive evidence was not presented regarding
the underlying facts of those previous convictions in the
instant trial, those convictions, and the instant
conviction, arose from the same crime spree.

imprisonment, and directed him to pay court costs,
appointed attorney fees, a medical services reimbursement,
and a $100 victims' compensation fund assessment.  (C. 28,
Sentencing R. 13-16)

    After the trial court denied McCullough's motion for a
new trial, he appealed to this Court. (C. 35, 36, 39)

## STANDARDS OF REVIEW

1. Regarding McCullough's claim that the State's evidence was insufficient to support his conviction, "'[t]he test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So. 2d 497, 498 (Ala. Crim. App. 1997), citing O'Neal v. State, 602 So. 2d 462, 464 (Ala. Crim. App. 1992). "In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution." Vaughn v. State, CR-01-1774, 2003 WL 21480383, at *18 (Ala. Crim. App. 2003) (internal citations omitted).

Regarding McCullough's claim that the jury's verdict was against the weight of the evidence, "'[t]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.'" Daniels v. State, 762 So. 2d 864, 866 (Ala. Crim. App. 1999) (quoting

_Zumbado v. State_, 615 So. 2d 1223, 1241 (Ala. Crim. App. 1993).

2. Regarding McCullough's claim that the State failed to provide evidence to corroborate his codefendant's testimony, this claim is not preserved due to McCullough's failure to object to his co-defendant's testimony on this ground. "If a defendant does not object to the testimony of an accomplice, that issue is not preserved for appellate review." _Brown v. State_, 645 So. 2d 309, 312 (Ala. Crim. App. 1994). Accomplice testimony must be corroborated, but that corroborative evidence need not be strong or even sufficient by itself to support a conviction. Ala. Code (1975) 12-21-222; _Johnson v. State_, 820 So. 2d 842, 869 (Ala. Crim. App. 2000).

3. Regarding McCullough's arguments that the trial court should have instructed the jury regarding criminal trespass, this claim is not preserved for appellate review. Objections to jury instructions must be specific; otherwise, contentions of error resulting from the jury instructions are procedurally barred on appeal. _Cross v. State_, 536 So. 2d 1155, 1161 (Ala. Crim. App. 1988). The trial court "'is vested with broad discretion in

formulating its charge, so long as it accurately reflects the law.'" <u>Gargus v. State</u>, 764 So. 2d 565, 567 (Ala. Crim. App. 1999).

## SUMMARY OF THE ARGUMENT

1.  The trial court did not err in submitting McCullough's attempted first-degree burglary charge to the jury.  It appears that McCullough questions both the sufficiency and the weight of the evidence.  The State's evidence, which included testimony from co-defendant Billy Ralph Norris and the statement of McCullough himself made to police, clearly established a prima facie case of attempted first-degree burglary.  In addition, the jury, rather than this Court, was in the proper position to weigh the issues of witness credibility and to make factual determinations regarding the evidence, and this Court should not disturb the jury's verdict on the basis of evidential weight.

2.  McCullough did not preserve his contentions regarding the supposed lacked of evidence to corroborate the testimony of Billy Ralph Norris, his co-defendant and accomplice, because he failed to object to Norris's testimony on this ground.  Further, even if McCullough had preserved the argument, it would have been meritless, because the State produced sufficient corroborative

18

evidence, including McCullough's own statement, to support the jury's verdict.

3.  McCullough did not preserve his contentions regarding the trial court's jury instructions, by failing to specifically object following the trial court's decision to not instruct the jury regarding attempted criminal trespass.  Even if he had preserved this issue, it would been meritless, because McCullough's own testimony -- that he entered the Gragg property solely to prevent Norris from committing burglary -- could not constitute a finding that he committed a knowing, unlawful entry for purposes of the criminal trespass statutes.

For these reasons, this Court should affirm McCullough's attempted first-degree burglary conviction.

**ARGUMENT**

I.    **The Trial Court Did Not Err In Submitting McCullough's Attempted Burglary Charge To The Jury.**

McCullough first argues that the jury's "verdict was contrary to the law and the weight of the evidence." Appellant's Brief 10.  McCullough appears to contend that the State's evidence was insufficient to prove the offense of attempted burglary, while at the same time questioning the weight of the State's evidence; he attacks the credibility of the State's evidence, and cites his own testimony to support his argument.  Appellant's Brief 10-13 ("VERDICT WAS CONTRARY TO THE LAW AND THE WEIGHT OF THE EVIDENCE...[t]he defendant testified that he was trying to stop Billy Norris from kicking in the front door of the home and committing a crime...[t]he conviction cannot stand while supported only by the unsigned statement of the defendant and the testimony of the co-defendant, a convicted liar...The only credible evidence of an overt act is that Christopher McCullough was present on the Gragg's property...").

**A.    The State presented sufficient evidence to support McCullough's conviction.**

To the extent that McCullough argues on appeal that the State's evidence was insufficient to support his conviction, McCullough preserved this argument at trial in his motions for a judgment of acquittal at the close of the State's case and at the close of all evidence.  (R. 172, 199)  "The issue of the sufficiency of the evidence is preserved for review by a defendant's motion for a judgment of acquittal that is entered at the end of the state's case, at the close of the evidence, see A.R.Cr.P. 20.2(a), or after the verdict is entered, see A.R.Cr.P. 20.3."  Zumbado v. State, 615 So. 2d 1223, 1241 (Ala. Crim. App. 1993).

The State submitted ample evidence to support a prima facie case of attempted first-degree burglary.  "'In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.'"  McIntyre v. State, 571 So. 2d 364, 365 (Ala. Crim. App. 1990) (citation omitted).  "'The test to be applied is

21

whether the jury might reasonably find that the evidence
excluded every reasonable hypothesis except that of guilt;
not whether such evidence excludes every reasonable
hypothesis of guilt, but whether a jury might reasonably so
conclude.'" <u>Harris v. State</u>, 745 So. 2d 940, 943 (Ala.
Crim. App. 1999) (citation omitted).

First degree burglary is defined, in pertinent part, as
follows:

> "(a) A person commits the crime of burglary in
> the first degree if he knowingly and
> unlawfully enters or remains unlawfully in a
> dwelling with intent to commit a crime
> therein, and, if, in effecting entry or while
> in dwelling or in immediate flight therefrom,
> he or another participant in the crime:
>
> "(1) Is armed with explosives or a deadly
> weapon[.]"

Ala. Code (1975) § 13A-7-5.

Further, "[a] person is guilty of an attempt to commit a
crime if, with the intent to commit a specific offense, he
does any overt act towards the commission of such offense."
Ala. Code (1975) § 13A-4-2.

The State's evidence demonstrated that Christopher
McCullough and Billy Ralph Norris intended to burglarize
the Gragg home and took affirmative steps to do so.  They
entered the Gragg property with the purpose of burglarizing

the home.  (R. 127-129)  Both men concealed their identity,
and McCullough was armed with a nine-millimeter pistol.
(R. 129-131, 136, 143)  They checked the windows of the
home in preparation for their entry.  (R. 132) McCullough
had duct tape in his car because he would "probably need
that."  (R. 131)  McCullough informed the police regarding
how he hid his car in the cemetery, and then approached the
Gragg house masked and armed with a nine-millimeter gun.
(R. 166)  Only the presence of the Graggs' housekeeper in
front of a window, and her sighting of the men -- when
combined with the approach of police cars onto the property
in response to Mike Gragg's 911 telephone call -- caused
McCullough to hesitate.  (R. 80, 82, 132-134)  McCullough
told Norris that he wanted to enter the home, even though
occupied, because he had a pistol and "this house right
here is too good" (R. 133); thus, it was truly the police's
swift action that prevented a burglary, and a potential
capital murder, inside the Gragg home.

"In order to prove an attempted burglary, the State
must show an act done with the intent to effectuate the
alleged burglary[,]" Popwell v. State, 523 So. 2d 515, 516
(Ala. Crim. App. 1987), and the jury could properly infer

from the State's evidence that McCullough acted with the intent to effectuate a burglary of the Gragg home. "The mind of an alleged offender...may be read from his acts, conduct, and inferences fairly deductible from all the circumstances." Popwell, 523 So. 2d 515, 516, citing 13 Am. Jur. 2d Burglary § 52 (1964). Undoubtedly, "[i]t was not necessary that [McCullough] gain actual entry into [the Gragg home] in order to allow an inference of his intent to commit a theft once inside the [the home]." Popwell v. State, 480 So. 2d 41, 45 (Ala. Crim. App. 1985). Therefore, to the extent that McCullough questions the sufficiency, rather than weight of the evidence, it is clear that the trial court did not err in its denial of McCullough's motions for a judgment of acquittal.

**B.    The jury's verdict was not against the weight of the evidence.**

As noted above, it is unclear whether McCullough questions the sufficiency of the evidence, the weight of the evidence, or both; although he argues against the sufficiency of the State's evidence by maintaining that it did not prove the elements of attempted burglary, he also appears to question the weight of the State's evidence; notably, he asserts that the jury's verdict "was contrary

to the law and the weight of the evidence[,]" argues

against the credibility of the State's evidence, and cites

his own testimony to support his argument.  Appellant's

Brief 10-13.

> "'[T]he 'weight of the evidence' refers to 'a
> determination [by] the trier of fact that a
> greater amount of credible evidence supports
> one side of an issue or cause than the
> other[...]'" "The issue of the weight of the
> evidence is preserved by a motion for a new
> trial, stating 'that the verdict is contrary
> to law or the weight of the evidence.' See
> A.R. Cr. P. 24.1(c)(1)."

Douglas v. State, CR-03-0211, 2004 WL 1178366, at *1(Ala.

Crim. App. 2004), citing Zumbado v. State, 615 So. 2d 1223,

1240-1241 (Ala. Crim. App. 1993) (internal citations

omitted). McCullough preserved this argument in his motion

for a new trial, alleging that the jury's verdict was

contrary to law and the weight of the evidence.  (C. 29-31,

35)

    To the extent that McCullough questions the weight of

the evidence, "'it is not the province of this court to

reweigh the evidence presented at trial.'" Chestang v.

State, 837 So. 2d 867, 871 (Ala. Crim. App. 2001) (citation

omitted).  "'The credibility of witnesses and the weight or

probative force of testimony is for the [trier of fact] to

judge and determine.'" Id.  The Court views the evidence in a light most favorable to the State, and draws all reasonable inferences and resolves all credibility choices in favor of the jury's determination.  Id.  It will not "second-guess the jury's determinations regarding [a witness's] credibility or the force of [his or] her testimony."  Underwood v. State, 834 So. 2d 819, 822 (Ala. Crim. App. 2001).  "Conflicting evidence presents a question for the jury, and a verdict rendered on conflicting evidence will not be disturbed on appeal." Bennett v. State, 584 So. 2d 869, 871 (Ala. Crim. App. 1990).  McCullough's questioning of the credibility of his codefendant's testimony, as well as his assertions that he attempted to prevent the burglary, rather than attempted to commit a burglary, were factual issues for the jury to determine.  The jury weighed those issues and found the State's evidence more credible than that of McCullough. The trial court did not err in overruling McCullough's motion for a new trial on this ground.

## II.  McCullough Did Not Preserve For Appellate Review His "Lack Of Corroborative Evidence" Argument.

McCullough next argues that the State failed to provide sufficient evidence to corroborate the testimony of codefendant Billy Ralph Norris, as required by Ala. Code (1975) § 12-21-222.  Appellant's Brief 14-17.

While Section 12-21-222 of the Alabama Code (1975) provides that a criminal defendant cannot be convicted of a felony solely upon the testimony of an accomplice, a defendant must first specifically present his "lack of corroborative evidence" argument to the trial court, or he fails to preserve the issue for appellate review. McCullough first raised this argument in his motion for a new trial.  (C. 31) This was insufficient to preserve this appellate argument.

> "[T]he appellant contends that [the witness] was an accomplice, and that the state failed to corroborate his testimony as is required by § 12-21-222, Code of Alabama 1975.
>
> " This issue was presented for the first time in the appellant's motion for a new trial and thus was not timely. If a defendant does not object to the testimony of an accomplice, that issue is not preserved for appellate review."

Brown v. State, 645 So. 2d 309, 312 (Ala. Crim. App. 1994) (emphasis added).  See also Ward v. State, 376 So. 2d 1112,

1115 (Ala. Crim. App. 1979), <u>cert.</u> <u>denied</u>, 376 So. 2d 1117
(Ala. 1979)("Whether there is an accomplice witness and
whether he has or has not been corroborated must first be
put to the trial judge...'[s]pecific objections or motions
are generally necessary before the ruling of the trial
judge is subject to review...'"); <u>Crowder v. State</u>, 448 So.
2d 507, 508 (Ala. Crim. App. 1984) ("[I]ssues of whether a
witness is an accomplice and whether that testimony has
been corroborated must be presented to the trial judge or
else those issues are waived."); <u>Williams v. State</u>, 497 So.
2d 1142, 1145 (Ala. Crim. App. 1986)(citing <u>Ward</u> and
<u>Crowder</u> and holding that, by failing to present the issue
to the trial court, appellant failed to preserve his
argument regarding whether a witness was an accomplice
whose testimony required corroboration). By failing to
object to Norris's testimony on this ground, McCullough has
not preserved this issue for the Court's review.

Even if McCullough had properly preserved this
argument, it would have been meritless. McCullough's
argument that Norris's testimony was insufficiently
corroborated appears to presume that, in order to comply
with § 12-21-222, the State's remaining evidence was

required to be sufficient by itself to convict him of
attempted burglary without Norris's testimony.  To the
contrary, "[w]hen the testimony of the accomplice is
subtracted, the remaining testimony does not have to be
sufficient by itself to convict the accused."  <u>Johnson v.</u>
<u>State</u>, 820 So. 2d 842, 869 (Ala. Crim. App. 2000).

> "The corroboration evidence need not be
> strong, nor sufficient of itself to support a
> conviction, the reasoning being that it
> legitimately tend to connect the accused with
> the offense; it need not directly confirm any
> particular fact nor go to every material fact
> stated by the accomplice."

<u>Id.</u>  In addition, McCullough's own statement indicated that
he drove to the Gragg home, approached the home both masked
and armed, and ran away only after seeing the Graggs'
housekeeper and hearing the sound of approaching police.
(R. 166)  "A voluntary confession or an incriminating
statement of an accused is sufficient corroboration of an
accomplice's testimony for purposes of § 12-21-222[.]"
<u>Harris v. State</u>, 420 So. 2d 812, 817 (Ala. Crim. App.
1982).

### III. McCullough Did Not Preserve For Appellate Review His Argument That The Trial Court Erred In Refusing His Requested Instructions Regarding The Offenses Of Attempted First-Degree Criminal Trespass And Second-Degree Criminal Trespass.

In his final argument, McCullough contends that the trial court erred in refusing to instruct the jury regarding the offense of attempted criminal trespass. Appellant's Brief 17-21.

McCullough did not preserve this argument for appellate review. Although defense counsel requested jury instructions on the charges of attempted first-degree criminal trespass and second-degree criminal trespass on the basis that McCullough's testimony supported those instructions as lesser-included offenses (R. 199-205), the trial refused the instructions, and defense counsel did not specifically object to that refusal:

> "THE COURT:...[McCullough's] testimony is that the only entry on these premises was to stop the commission of the offense by his co-defendant. That's his testimony. The State's testimony is basically that they were armed, that the intent was to break into this dwelling that they knew to be occupied. I don't think any of the lesser-included charges apply save with the exception of the burglary second. And for the record that's based on the actual testimony and evidence presented and looking at both the State's evidence and defense evidence.

"DEFENSE COUNSEL:  Just like our exceptions
noted on those.

"THE COURT:  Okay.  We've got that much."

(R. 205-206)  The trial court instructed the jury regarding

the offenses of attempted first-degree burglary and

attempted second-degree burglary.  (R. 237)  After the

trial court instructed the jury, but before deliberations

began, the trial court asked whether the parties were

satisfied with its oral charge; the State indicated it was

satisfied, and defense counsel stated, "[w]ith exceptions

already noted defense is satisfied."  (R. 242)

By failing to specifically object to the trial court's

refusal to instruct on the offenses of attempted first-

degree criminal trespass and second-degree criminal

trespass, and by referencing only this same nonspecific

"objection" after the trial court's oral charge, McCullough

failed to preserve alleged error.  A party may not assert

error in the trial court's jury instructions "unless the

party objects thereto before the jury retires to consider

its verdict, stating the matter to which he or she objects

and the grounds of the objection."  Ala.R.Crim.P. Rule

21.3.  "The defendant is required to state with

particularity the grounds of his objection to the court's

31

refusal to give a requested charge." Miller v. State, 673
So. 2d 819, 820 (Ala. Crim. App. 1995). "In order to
preserve for review an objection to the giving or the
denial of a jury instruction, it is necessary for the
appellant to state for the record upon what specific
grounds the objection is made." Cauley v. State, 681 So.2d
1105, 1107 (Ala. Crim. App. 1996). McCullough has thus
left nothing for this Court to review on this issue. See
Buford v. State, CR-03-0042, 2004 WL 595332, at *6 (Ala.
Crim. App. 2004) (defendant's renewal of previous
nonspecific objection following trial court's oral charge
did not preserve alleged error in jury instructions);
Withee v. State, 728 So. 2d 684, 688 (Ala. Crim. App.
1998) (no alleged error preserved when defendant requested
instruction, but did not object following trial court's
refusal of instruction). Cf. Northeast Alabama Regional
Medical Center v. Owens, 584 So. 2d 1360, 1364 (Ala. 1991)
("reservation of exception" to trial court's refusal of
requested charges, made following trial court's oral
charge, was "too general to give the trial court an
opportunity to correct any errors that it may have made"
for purposes of Ala.R.Civ.P. Rule 51).

Even if this argument had been preserved, it would have been meritless. To attempt to commit first or second degree criminal trespass, one must attempt to "knowingly ente[r] or remai[n] in a dwelling" or "upon real property which is fenced or enclosed in a manner designed to exclude intruders." Ala. Code (1975) §§ 13A-7-2, 13A-7-3. As discussed above, the State's evidence demonstrated that McCullough attempted to burglarize the Graggs' home. According to McCullough's testimony at trial, however, he entered the Gragg property solely in order to prevent Norris from committing a crime -- he specifically stated such when directly questioned by the trial court:

> "THE COURT: Mr. McCullough, did you ever go up to this house?
>
> "MCCULLOUGH: I went up there to talk him out of it. I admit I told him that. I'm going to be straight up with y'all, straightforward.
>
> "THE COURT: It's your testimony that the only time you went to the house was with the purpose of having him stop what he's doing?
>
> "MCCULLOUGH: Yes, sir.
>
> "THE COURT: Did you ever other than that one time get out of this wood line? Did you ever get out of the woods other than when you went up to the house to get him to come back?
>
> "MCCULLOUGH: No, sir, other than go back to my car.

33

"THE COURT:  So the only time you approached
that house from the woods --

"MCCULLOUGH:  He walked up to the front door
and kick it in and I told him he done went
crazy.

"THE COURT:  At any time after left that car
did you have a pistol?

"MCCULLOUGH:  No, sir.

"THE COURT:  Did Billy have a pistol?

"MCCULLOUGH:  Not that I know of.  They had
stopped my car for --  reason they searched my
car by saying they seen Billy with a pistol.
Their own purpose of stopping my vehicle.  I
come back around and none of that happened.

"THE COURT:  You were there with Billy?

"MCCULLOUGH:  Yes.

"THE COURT:  When he approached that house did
he have a pistol?

"MCCULLOUGH:  No, sir.

"THE COURT:  He did not?

"MCCULLOUGH:  I didn't see one."

(R. 197-198)

While "'[a]n accused is entitled to an instruction on a

lesser-included offense when there is a reasonable theory

from the evidence supporting his position, however doubtful

or weak in credibility[,]'" the trial court "'is vested

34

with broad discretion in formulating its charge, so long as it accurately reflects the law.'" <u>Gargus v. State</u>, 764 So. 2d 565, 567 (Ala. Crim. App. 1999) (internal citations omitted). If, as McCullough suggests, he was aware that Norris intended to burglarize the Gragg home, and he entered the Gragg property only to prevent that felony, this would not have constituted a knowing, unlawful entry into that property as required to prove the offense of attempted criminal trespass under §§ 13A-7-2 and 13A-7-3. Essentially, McCullough's claim that he was on the Gragg property only to prevent Norris from burglarizing the home amounted to an alibi offense; he denied any involvement in the crime other than his purported noble attempt to prevent the crime. "The jury, from the evidence presented, could arrive at only one or two conclusions...[it] had the option of believing the State's witnesses or believing the appellant's version and acquitting him." <u>Mullis v. State</u>, 545 So. 2d 205, 211 (Ala. Crim. App. 1989). A defendant in McCullough's circumstances charged with attempted burglary is not entitled to an instruction regarding criminal trespass where the only reasonable conclusion from the evidence, properly drawn by the trial court, is that the

defendant is guilty of attempted burglary (of one degree or another) or of no crime at all.  Cf. Williams v. State, 377 So. 2d 634, 637 (Ala. Crim. App. 1979) (defendant charged with robbery is not entitled to instruction regarding larceny when evidence shows either robbery or no crime whatsoever was committed).

**CONCLUSION**

For the foregoing reasons, the trial court's judgment is due to be affirmed.

Respectfully submitted,

Troy King
*Attorney General*

P. David Bjurberg
*Assistant Attorney General*
by:

Marc A. Starrett
*Assistant Attorney General*

36

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August, 2004, I did serve a copy of the foregoing on the following, by placing the same in the United States Mail, postage prepaid and properly addressed as follows:

KYLA GROFF KELIM, ESQ.
217 Madison Street
P.O. Box 1977
Alexander City, AL 35011

Marc A. Starrett
Assistant Attorney General

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7300
159418/STARRETT
65873-001

37

# THE STATE OF ALABAMA - - JUDICIAL DEPARTMENT
## THE ALABAMA COURT OF CRIMINAL APPEALS

*Starrett 65873*

**CR-03-1103**

Christopher McCullough, alias v. State of Alabama  (Appeal from Chambers  Circuit Court: CC02-318)

## CERTIFICATE OF JUDGMENT

WHEREAS, the appeal in the above referenced cause has been duly submitted and considered by the Court of Criminal Appeals; and

WHEREAS, the judgment indicated below was entered in this cause on September 24th 2004:

### Affirmed by Memorandum.

NOW, THEREFORE, pursuant to Rule 41 of the Alabama Rules of Appellate Procedure, it is hereby certified that the aforesaid judgment is final.

**Witness. Lane W. Mann, Clerk**
**Court of Criminal Appeals, on this**
**the 13th day of October, 2004.**

**Clerk**
**Court of Criminal Appeals**
**State of Alabama**

cc: Hon. Ray D. Martin, Circuit Judge
    Hon. Charles W. Story, Circuit Clerk
    Kyla L. Groff Kelim, Attorney
    Marc A. Starrett, Asst. Atty. Gen.



EXHIBIT
**1E**

# PETITION FOR RELIEF FROM CONVICTION OR SENTENCE

### (Pursuant to Rule 32,
### Alabama Rules of Criminal Procedure)

CC 02
318.61

FILED IN OFFICE THIS

JUL 27 2005

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

**Case Number**

CC __2002__ __318__
ID   YR   NUMBER

IN THE ___CIRCUIT___ COURT OF ___CHAMBERS County___, ALABAMA

___CHRISTOPHER McCULLOUGH___  vs.  ___STATE OF ALABAMA___
Petitioner (Full Name)                    Respondent

[Indicate either the "State" or, if filed in municipal court, the name of the "Municipality"]

Prison Number ___174909___     Place of Confinement ___W.E. DONALDSON___

County of conviction ___CHAMBERS COUNTY___

**NOTICE:  BEFORE COMPLETING THIS FORM, READ CAREFULLY THE ACCOMPANING INSTRUCTIONS.**

1. Name and location (city and county) of court which entered the judgment of conviction or sentence under attack ___LAFAYETTE, ALABAMA   CHAMBERS County, ALABAMA___

2. Date of judgment of conviction ___JANUARY 18 2004___

3. Length of sentence ___40 YEARS___

4. Nature of offense involved (all counts) ___BURGLARY 1ST, THEFT OF PROPERTY 2ND___

5. What was your plea?  (Check one)
   (a) Guilty _____
   (b) Not guilty __✓__
   (c) Not guilty by reason of mental disease or defect _____
   (d) Not guilty and not guilty by reason of mental disease or defect _____

EXHIBIT
2A

6.  Kind of trial: (Check one)

    (a)  Jury _✓_              (b)  Judge only _____

7.  Did you testify at the trial?

    Yes _✓_              No _____

8.  Did you appeal from the judgment of conviction?

    Yes _✓_              No _____

9.  If you did appeal, answer the following:

    (a)  As to the state court to which you first appealed, give the following information:

         (1)  Name of court _COURT OF CRIMINAL APPEALS_

         (2)  Result _AFFIRMED DECISION_

         (3)  Date of result _July 2004_

    (b)  If you appealed to any other court, then as to the second court to which you appealed, give
         the following information:

         (1)  Name of court _____

         (2)  Result _____N/A_____

         (3)  Date of result _____

    (c)  If you appealed to any other court, then as to the third court to which you appealed, give the
         following information:

         (1)  Name of court _____

         (2)  Result _____N/A_____

         (3)  Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes _√_____          No _____

11. If your answer to Question 10 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

(a)  (1)  Name of court _CHAMBERS COUNTY CIRCUIT COURT_

     (2)  Nature of proceeding _MOTION FOR NEW TRIAL_

     (3)  Grounds raised _NO CORROBORATE EVIDENCE_
          _FALSE TESTIMONY BY ARRESTING OFFICERS_
          _AND CO-DEFENDANT_

          _____

          _____

          (attach additional sheets if necessary)

     (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

          Yes _____          No _√_____

     (5)  Result _____

     (6)  Date of result _____

(b)  As to any second petition, application, or motion, give the same information:

     (1)  Name of court _____

     (2)  Nature of proceeding _____

     (3)  Grounds raised _____

          N/A

          (attach additional sheets if necessary)

     (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

          Yes _____          No _____

     (5)  Result _____

     (6)  Date of result _____

(c)  As to any third petition, application, or motion, give the same information (attach additional sheets giving the same information for any subsequent petitions, applications, or motions):

     (1)  Name of court _____

3

(2)  Nature of proceeding _____

(3)  Grounds raised _____

N/A

(attach additional sheets if necessary)

(4)  Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No _____

(5)  Result _____

(6)  Date of result _____

(d)  Did you appeal to any appellate court the result of the action taken on any petition, application, or motion?

(1)  First petition, etc.          Yes _____          No ✓_____

(2)  Second petition, etc.        Yes _____          No _____

(2)  Third petition, etc.         Yes _____          No _____

**ATTACH ADDITIONAL SHEETS GIVING THE SAME INFORMATION
FOR ANY SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS.**

(e)  If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not:

ATTORNEY KYLA GROSS HELEN NEVER TOLD ME ANY THING UNTIL THE NEXT JURY TRIAL ON WHICH I DISMISSED HER.

12.  Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information. Include all facts. If necessary, you may attach pages stating additional grounds and the facts supporting them.

# GROUNDS OF PETITION

**Listed below are the possible grounds for relief under Rule 32. Check the ground(s) that apply in your case, and follow the instruction under the ground(s):**

_____  A.  The Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

For your information, the following is a list of the most frequently raised claims of constitutional violation:.

4

(1)   Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(2)   Conviction obtained by use of coerced confession.

(3)   Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(4)   Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(5)   Conviction obtained by a violation of the privilege against self-incrimination.

(6)   Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(7)   Conviction obtained by a violation of the protection against double jeopardy.

(8)   Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(9)   Denial of effective assistance of counsel.

**This list is not a complete listing of all possible constitutional violations.**

If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. Be specific and give details.

_____    B.   **The court was without jurisdiction to render the judgment or to impose the sentence.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____    C.   **The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____    D.   **Petitioner is being held in custody after his sentence has expired.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____    E.   **Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:**

**The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence; and**

**The facts are not merely cumulative to other facts that were known; and**

5

The facts do not merely amount to impeachment evidence; and

If the facts had been known at the time of trial or sentencing, the result would probably have been different; and

The facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

____ F.   The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

13.   **IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS RULE 32.2(b) LIMITS YOU TO ONLY ONE PETITION IN MOST CIRCUMSTANCES. IT PROVIDES:**

"**Successive Petitions**. The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exist why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

A.   Other than an appeal to the Alabama Court of Criminal Appeals or the Alabama Supreme Court, have you filed in state court any petition attacking this conviction or sentence?

Yes _____       No __✓__

B.   If you checked "Yes," give the following information as to earlier petition attacking this conviction or sentence:

(a)   Name of court _____

(b)   Result _____

(c)   Date of result _____
      (attach additional sheets if necessary)

C.   If you checked the "Yes" line in 13A, above, and this petition contains a different ground or grounds of relief from an earlier petition or petitions you filed, attach a separate sheet or sheets labeled: "EXPLANATION FOR NEW GROUND(S) OF RELIEF."

On the separate sheet(s) explain why "good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and [why the] failure to entertain [this] petition will result in a miscarriage of justice."

14.   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes _____       No __✓__

6

15. Give the name and address, i. .lown, of each attorney who represent. you at the following stages of the case that resulted in the judgment under attack:

(a) At preliminary hearing _STEVE MORRES ; WEEDOWEE ALABAMA_

(b) At arraignment and plea _STEVE MORRES, WEEDOWEE, ALABAMA_

(c) At trial _KYLA GROFF HELZY, ALEXANDER CITY, ALABAMA_

(d) At sentencing _KYLA GROFF HELZY, ALEXANDER CITY, ALABAMA_

(e) On appeal _KYLA GROFF HELZY, ALEXANDER CITY ALABAMA_

(f) In any post-conviction proceeding _CHRISTOPHER McCULLOGH_

(g) On appeal from adverse ruling in a post-conviction proceeding _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes _____          No ✓

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ✓          No _____

(a) If so, give name and location of court which imposed sentence to be served in the future: _____
_CHAMBERS COUNTY_

(b) And give date and length of sentence to be served in the future: _25 YEARS_

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ✓          No _____

18. What date is this petition being mailed?
_July 20, 2005_

Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

7



POST-CONVICTION REMEDY RULE 32

③ CONVICTION OBTAINED BY USE OF EVIDENCE GAINED PURSUANT TO AN UNCONSTITUTIONAL SEARCH AND SEIZURE. : ON MARCH 19,2002 THE CANETT POLICE DEPARTMENT CONDUCTED AN UNLAWFUL SEARCH AND SEIZURE UPON MY 1998 MUSTANG BY DELIBERATELY LIEING ACCUSING THE PASSENGER OF MY CAR WAS SEEN WITH A GUN.

AT JURY TREAL ALL WITNESS'S TESTIFIED THAT NO ONE EVER SAID ANYTHING ABOUT SEEING A GUN BY ANY MEANS THIS CONSTITUTED THEIR SEARCH OF MY VEHICLE ILLEGALLY.

⑤ CONVICTION OBTAINED BY A VIOLATION OF THE PRIVILEGE AGAINST SELF- INCRIMINATION. : I WAS PARTIALLY CONVICTED BECAUSE I USED THE WORD GANG TO PROVE TO THE JURY THAT I TOLD THE TRUTH AND THEY SAY THAT IN I WAS INCRIMINATING BECAUSE OF I SAID THAT BILLY NORRIS WANTED TO BURGLARIZE THIS HOUSE TO GET RECOGNITION FOR STREET CREDIBILITY

SE. ①

(6.) CONVICTION OBTAINED BY THE UNCONSTITUTIONAL
FAILURE OF THE PROSECUTION TO DISCLOSE
TO THE DEFENDANT EVIDENCE FAVORABLE
TO THE DEFENDANT. : THE PROSECUTION
WITH HELD VALUABLE EVIDENCE FROM THE
DEFENDANT AS OF A VIDEO TAPE SHOWING
THAT THE SKI MASK THEY SAW IN MY
BACK POCKET, THAT THEY LET ME WALKED
AWAY WITH THE SKI MASK ON WHICH
I THREW AWAY. SO AT JURY TRIAL THEY
PRESENTED A SKI MASK WHICH WAS FALSE
EVIDENCE AT THIS JURY TRIAL ON WHICH
I TRIED TO GET MY ATTORNEY KYLA HELIM
TO SHOW THE JURY THE VIDEO TAPE BUT SHE
SUGGESTED THAT, SHE DIDN'T WANT THE
JURY TO SEE THE GUNS IN THIS VEHICLE
BUT WANTED ME TO SAY THAT THEY WAS
IN MY CAR, THIS VIDEO TAPE WILL
VERIFY THAT THEY THE PROSECUTION
ADMITTED FALSE EVIDENCE TO STRENGTHEN
THE STATES CASE.

(9.) DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL.
INEFFECTIVE ASSISTANCE OF COUNSEL IS
COGNIZABLE WHEN ATTORNEY REPRESENTED
DEFENDANT AT TRIAL AND ON APPEAL,
THERE FORE THIS ATTORNEY FAILED TO

(2.) PRODUCE THE PRODUCT THAT IS TO USE THE

JURY TRIAL. SHE ALLOWED THE STATE TO
PRODUCE FALSE EVIDENCE AND DID NOT
QUESTION THE ARRESTING OFFICERS
PROPERLY LIKE I ASKED. THIS WAS A SIMPLE
ATTEMPTED BURGLARY TRIAL ON WHICH NO
ATTEMPT WAS MADE TO ENTER THIS RESIDENCE
BY NO MEANS WHATSOEVER.
I NEVER HAD ANY INTENTIONS OF
COMMITTING ANY CRIME. I WAS JUST
THERE TO OBSERVE A ILLEGAL ACT ON WHICH
I STOPPED FROM HAPPENING. BUT THE
POLICE DEMANDED ALL THE CREDIT WHICH
IS COMPLETELY OBSURD

Christopher C. McCullough
PETITIONER

DONE JULY 20, 2005

# PETITIONER'S VERIFICATION UNDER OATH
# SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct.

Executed on _JuLy 21 2005_
(Date)

_Christopher McCullough_
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this the _21_ day of _July_ _2005_

_James A Beachem_
Notary Public

My Commission Expires
9-25-2008

## OR *

## ATTORNEY'S VERIFICATION UNDER OATH
## SUBJECT TO PENALTY FOR PERJURY

I Swear (or affirm) under penalty of perjury that, upon information and belief, the foregoing is true

and correct. Executed on _____
(Date)

_____
Signature of Petitioner's Attorney

SWORN TO AND SUBSCRIBED before me this the _____ day of _____ , _____

_____
Notary Public

Name and address of attorney representing petitioner
in this proceeding (if any)

_____

_____

_____

_____

_____

* If petitioner is represented by counsel, Rule 32.6(a) permits either petitioner or counsel to verify the petition.

| ID | YR | NUMBER |
|----|----|--------|

**(To be completed
by Court Clerk)**

# IN FORMA PAUPERIS DECLARATION

*CHAMBERS County*

[Insert appropriate court]

*CHRISTOPHER McCullough*

(Petitioner)

vs.

*STATE OF ALABAMA*

(Respondent(s))

## DECLARATION IN SUPPORT OF REQUEST TO PROCEED
## IN FORMA PAUPERIS

I, *CHRISTOPHER McCullough*, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?    Yes _____    No ✓

   a. If the answer is "yes", state the amount of your salary or wages per month, and give the name and address of your employer.

   _____

   _____

   b. If the answer is "no", state the date of last employment and the amount of the salary and wages per month which you received.

   *9-19-2001*

   _____

2. Have you received within the past twelve months any money from any of the following sources?

   a. Business, profession, or other form of self-employment?

      Yes _____    No ✓

   b. Rent payments, interest, or dividends?

      Yes _____    No ✓

   c. Pensions, annuities, or life insurance payments?

      Yes _____    No ✓

   d. Gifts or inheritances?

      Yes _____    No ✓

   e. Any other sources?

      Yes _____    No ✓

2

If the answer to any of the above is "yes", describe each source of money and state the amount received from each during the past twelve months.

_____

_____

_____

_____

3.  Do you own cash, or do you have money in a checking or savings account?

    Yes _____                    No ✓_____

    (Include any funds in prison accounts.)

    If the answer is "yes", state the total value of the items owned.

    _____

    _____

4.  Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

    Yes _____                    No ✓_____

    If the answer is "yes", describe the property and state its approximate value.

    _____

    _____

    _____

5.  List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

    _____ N/A _____

    _____

    I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

    Executed on  _____July 11, 2005_____
                        (Date)

                                          _Christopher McCullough_
                                          Signature of Petitioner

## CERTIFICATE

I hereby certify that the petitioner herein has the sum of $ _3.66 B_ on account to his credit at the institution where he is confined. I further certify that petitioner likewise has the foregoing securities to his credit according to the records of said _Wm. E. Donaldson_ institution:

**COPY FOR COURT**
**ATTACHED**

_7/12/05_
DATE

                                          AUTHORIZED OFFICER OF INSTITUTION

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
W.E. DONALDSON CORR. FACILITY

AIS #: 174909      NAME: MCCOLLOUGH, CHRISTOPHER        AS OF: 07/12/2005

| MONTH | # OF DAYS | AVG DAILY BALANCE | MONTHLY DEPOSITS |
|-------|-----------|-------------------|------------------|
| JUL | 19 | $0.05 | $0.00 |
| AUG | 31 | $0.05 | $0.00 |
| SEP | 30 | $0.05 | $0.00 |
| OCT | 31 | $0.05 | $0.00 |
| NOV | 30 | $0.05 | $0.00 |
| DEC | 31 | $1.57 | $16.00 |
| JAN | 31 | $0.39 | $0.00 |
| FEB | 28 | $4.03 | $32.00 |
| MAR | 31 | $0.48 | $0.00 |
| APR | 30 | $11.44 | $32.00 |
| MAY | 31 | $0.97 | $0.00 |
| JUN | 30 | $0.97 | $0.00 |
| JUL | 12 | $8.75 | $40.00 |

COURT COPY

# RULE 32.   POST-CONVICTION REMEDIES

### Rule 32.1   Scope of Remedy.

Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:

(a)   The constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

(b)   The court was without jurisdiction to render judgment or to impose sentence.

(c)   The sentence imposed exceeds the maximum authorized by law or is otherwise not authorized by law.

(d)   Petitioner is being held in custody after petitioner's sentence has expired.

(e)   Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

(1)   The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion persuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;

(2)   The facts are not merely cumulative to other facts that were known.

(3)   The facts do not merely amount to impeachment evidence;

(4)   If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and

(5)   The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received.

(f)   The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.

### Rule 32.2   Preclusion of Remedy.

(a)   Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:

(1)   Which may still be raised on direct appeal under the Alabama Rules of Appellate procedure or by post-trial motion under Rule 24; or

(2)   Which was raised or addressed at trial; or

(3)   Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or

(4)   Which was raised or addressed on appeal or in any previous collateral proceeding; or

(5)   Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b).

(b)   Successive Petitions. The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.

(c)   Limitations Period. Subject to the further provisions hereinafter set out in this section, the court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f), unless the petition is filed: (1) In the case of a conviction appealed to the Court of Criminal Appeals, within two (2) years after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, A.R.App.P.; or (2) In the case of

a conviction not appealed to    Court of Criminal Appeals, within tw   2) years after the time for filing an appeal lapses. The court shall not entertain a petition based on the grounds specified in Rule 32.1(e) unless the petition is filed within the applicable two-year period specified in the first sentence of this section, or within six (6) months after the discovery of the newly discovered material facts, whichever is later; provided, however, that the two-year period during which a petition may be brought shall in no case be deemed to have begun to run before the effective date of the precursor of this rule, i.e., April 1, 1987.

Rule 32.3    Burden of proof.

The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. The state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence.

Rule 32.4    Nature of proceeding and Relation to Other Remedies.

A proceeding under this rule displaces all post-trial remedies except post-trial motions under Rule 24 and appeal. Any other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under this rule. Proceedings under this rule shall be governed by the Rules of Criminal Procedure, except that the trial court in its sole discretion may allow the taking of depositions for discovery or for use at trial.

Rule 32.5    Venue.

Petitions filed under this rule shall be filed in and decided by the court in which the petitioner was convicted. If a petition is filed in another court, it shall be transferred to the court where the conviction occurred.

Rule 32.6    Commencement of Proceedings.

(a)    Form, Filing, and Service of Petition.    A proceeding under this rule is commenced by filing a petition, verified by the petitioner or petitioner's attorney, with the clerk of the court. A petition may be filed at any time after entry of judgment and sentence (subject to the provisions of Rule 32.2(c)). The petition should be filed by using or following the form accompanying this rule. If that form is not used or followed, the court shall return the petition to the petitioner to be amended to comply with the form. The petition shall be accompanied by two copies thereof. It shall also be accompanied by the filing fee prescribed by law or rule in civil cases in circuit court unless the petitioner applies for and is given leave to prosecute the petition in forma pauperis, in which event the fee shall be waived. If the petitioner desires to prosecute the petition in forma pauperis, he shall file the In Forma Pauperis Declaration at the end of the form. In all such cases, the petition shall also be accompanied by a certificate of the warden or other appropriate officer of the institution in which the petitioner is confined as to the amount of money or securities on deposit to the petitioner's credit in any account in the institution, which certificate may be considered by the court in acting upon his application for leave to proceed in forma pauperis. Upon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed in forma pauperis, the clerk shall file the petition and promptly send a copy to the district attorney (or, in the case of a petition filed in the municipal court, to the municipal prosecutor).

(b)    Specificity.    The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.

(c)    Notification of Appellate Court.    If an appeal of the petitioner's conviction is pending, the clerk shall also promptly send a copy of the petition to the appropriate appellate court, noting in the record the date and manner by which it is sent.

(d)    Assignment of Judge.    The proceeding shall be assigned to the sentencing judge where possible, but for good cause the proceeding may be assigned or transferred to another judge.

Rule 32.7    Additional Pleadings; Summary Disposition; Amendments.

(a)    Prosecutor's Response.    Within thirty (30) days after the service of the petition, or within the time otherwise specified by the court, the district attorney (or, in the case of a petition filed in the municipal court, the municipal prosecutor) shall file with the court and send to the petitioner or counsel for the petitioner, if any, a response, which may be supported by affidavits and a

certified by the court on such portions thereof as are appropriate or material to the issues raised in the petition.

(b) <u>Amendment of Pleadings</u>. Amendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment.

(c) <u>Appointment of Counsel</u>. If the court does not summarily dismiss the petition, and if it appears that the petitioner is indigent or otherwise unable to obtain the assistance of counsel, and if it further appears that counsel is necessary to assert or protect the assistance of counsel, and it further appears that counsel is necessary to assert or protect the rights of the petitioner, the court shall appoint counsel.

(d) <u>Summary Disposition</u>. If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing.

## Rule 32.8   Prehearing Conference.

In order to expedite the proceeding, the court may hold a prehearing conference, at which the petitioner need not be present if he or she is represented by counsel who is present. The conference may be by telephone. Whether held by telephone or in person, the conference shall be stenographically recorded or tape-recorded. At the prehearing conference, the court may order a showing by the petitioner of the materiality of the testimony expected to be presented by any witness subpoenaed by the petitioner, supported by affidavit where appropriate, and, upon petitioner's failure to show the requisite materiality, may order that the subpoena for such witness not be issued or be quashed.

## Rule 32.9   Evidentiary Hearing.

(a) <u>Hearing</u>. Unless the court dismisses the petition, the petitioner shall be entitled to an evidentiary hearing to determine disputed issues of material fact, with the right to subpoena material witnesses on his behalf. The court in its discretion may take evidence by affidavits, written interrogatories, or depositions, in lieu of an evidentiary hearing, in which event the presence of the petitioner is not required, or the court may take some evidence by such means and other evidence in an evidentiary hearing. When facilities are available, the court may in its discretion order that any evidentiary hearing be held at the place of petitioner's confinement, giving at least seven (7) days' notice to the officer in charge of the confinement facility. A verbatim record of the hearing shall be made.

(b) <u>Testimony of Petitioner</u>. The petitioner may be called to testify at the hearing by the court or by either party.

(c) <u>Decision</u>. If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the conviction, sentence, or detention; to any further proceedings, including a new trial; and to any other matters that may be necessary and proper.

(d) <u>Findings of Fact</u>. The court shall make specific findings of fact relating to each material issue of fact presented.

## Rule 32.10   Appeal.

(a) <u>Who May Appeal; Court to Which Appeal is Taken</u>. Any party may appeal the decision of a circuit court according to the procedures of the Alabama Rules of Appellate Procedure to the Court of Criminal Appeals upon taking a timely appeal as provided in Rule 4, Alabama Rules of Appellate Procedure. Any party may appeal a decision of a district or municipal court according to existing procedure.

(b) <u>Release of Petitioner</u>. The petitioner shall not be released on bond pending appeal by either party. Release of the petitioner on bond pending a retrial after an order requiring retrial has become final, or after the time for filing an appeal from such an order has lapsed, shall be governed by the laws and rules governing release on bond pending an initial trial.

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA     )
                      )
VS.                   )    CASE NO. CC-02-318
                      )
CHRISTOPHER McCULLOUGH     )

### ORDER

The District Attorneys Office is Ordered to respond to Defendant's Petition For Relief From Conviction Or Sentence within 30 days.

Let a copy of this Order issue to the defendant and the District Attorneys Office.

Signed this the 31st day of August, 2005.


_____
RAY D. MARTIN
CIRCUIT JUDGE


FILED IN OFFICE THIS

AUG 3 1 2005

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA



C. McCullough DA,

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA )
)        CC 02-318
VS. )
)
CHRISTOPHER MCCULLOUGH )

### RESPONSE TO RULE 32
### PETITION FOR RELIEF FROM CONVICTION OR SENTENCE

Comes now the State of Alabama, by and through the District Attorney for the Fifth Judicial Circuit and moves this Honorable Court to deny defendant's Rule 32 Petition For Relief From Conviction or Sentence.

As grounds therefore, the State would show the following:

1. Mr. McCullough's sentence became final in July of 2004, therefore it is the position of the Chambers County District Attorney's Office that this Rule 32 Petition is time-barred as it was not filed in the Circuit Clerk's Office until July 27, 2005.

2. This petition should be considered a successive petition because Mr. McCullough has already filed at least two prior Rule 32 Petitions which were denied. As a successive petition, this petition is due to be denied.

3. Police had probable cause to search the car because they were called to a home where it was reported that two black males were outside. Upon searching the area, Mr. McCullough and his passenger were in the car in a cemetery. Because of the proximity of the home, the officers performed a traffic stop on the car.

4. Mr. McCullough was not a witness, he represented himself.

5. Discovery was provided to the defense.

6. By Mr. McCullough's own admission, he was there to witness a criminal act.

Wherefore the premises considered, the State respectfully requests that defendant's Rule 32 Petition be denied.

Respectfully submitted this 30th day of August, 2005.

FILED IN OFFICE THIS

SEP 6 2005

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

*Derek L. Taunton*
Derek L. Taunton
Assistant District Attorney

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served upon the defendant, by placing a copy of the same, postage prepaid, in the U. S. Mail addressed to his proper mailing address this 30th day of August, 2005.

*Derek L. Taunton*
Derek L. Taunton
Assistant District Attorney



EXHIBIT
2C

CC 02 3|8

IN THE CIRCUIT COURT OF CHAMBERS COUNTY,
ALABAMA

STATE OF ALABAMA              ✱ CASE NUMBER
    VS.                        ✱ CC-02-3|8
CHRISTOPHER McCULLOUGH ✱
                              ✱
                              ✱
                              ✱

RESPONSE TO ASSISTANT DISTRICT ATTORNEY
DEREK L. TAUNTON - RESPONDS FOR MY RULE 32
PETITION FOR RELIEF FROM CONVICTION OR
SENTENCE: COMES NOW THE DEFENDANT OF
SAID CASE MOVES THIS COURT FOR AND
EVIDENTIARY HEARING AND GRANT THE
DEFENDANT'S RULE 32 PETITION FOR RELIEF
FROM CONVICTION OR SENTENCE.
THE FOLLOWING GROUNDS ARE FACTS OF THIS
CASE AS I RESPOND:

① BY THE DOCUMENTS I RECEIVED FROM FORMER
ATTORNEY KYLA GROFF KELIM THE COURT OF
CRIMINAL APPEALS AFFIRMED THIS CASE
DECISION ON SEPTEMBER 24, 2004 THEREFORE
THE DEFENDANT HAS UNTIL SEPTEMBER 24, 2005
TO FILE POST-CONVICTION RELIEF. THEREFOR
BY STATE LAW THIS RULE 32 WAS TIMELY
FILED AND IS RESTRICTED FROM BEING BARRED
TO THIS CIRCUIT COURT.

PAGE ①

EXHIBIT
2 D

② THIS IS THE ONLY RULE 32 POST-CONVICTION
FOR THIS PARTICULAR CASE THAT I HAVE SENT
TO THIS CIRCUIT COURT THERE FORE THE
WORD SUCCESSIVE IS NOT ADEQUATE IN THIS
CASE ANY OTHER RULE 32 THAT I FILED ON
A SEPARATE CHARGE HAS NO MERITS ON THIS
PARTICULAR RULE 32 POST-CONVICTION RELIEF
AND I NEVER RECEIVED AN COURT ORDER
DENYING ME RELIEF ON MY RULE 32 ON MY
FIRST CHARGES. I FILED A HABEAS CORPUS IN
FEDERAL COURT IN MONTGOMERY ALABAMA
ON WHICH THE DISTRICT ATTORNEY SPECIFIED
THAT, THAT CASE IS STILL PENDING NOW,
THERE FORE THIS IS THE SECOND FALSE THING
THAT THE ASSISTANT DISTRICT ATTORNEY AS
SAID IN HIS RESPONSE.

③ THE ASSISTANT DISTRICT ATTORNEY CONTENDS
THAT THE POLICE HAD PROBABLE CAUSE TO STOP
MY VEHICLE IS ABSURD, AT THIS JURY TRIAL
MIKE GRAGG TESTIFIED THAT HE SAW NOONE
ON HIS PROPERTY AND MRS. JUANITA GRAGG TESTIFIED
THAT SHE WAS STANDING AT THE SAME
WINDOW WITH MRS PEARL TRAMMELL AT THE
EXACT SAME TIME AND SAID SHE ONLY SAW
ONE VERY TALL BLACK MALE ON HER PROPERTY IN
HER PLAINVIEW. AND DESCRIBED EXACTLY WHAT
② HE HAD ON AND THE DESCRIPTION FITTED

BILLY NORRIS. SHE VERIFIED THIS COMPLETELY THAT SHE COULD SEE HER ENTIRE BACKYARD AND ONLY SAW HIM ON HER PROPERTY. THE ONLY PERSON WHO SAW TWO BLACK MALES WAS MRS. PEARL TRAMMELL BUT HOW IS THIS POSSIBLE WHEN SHE TESTIFIED BEFORE MRS. JUDITH GRAGG AND SAID THAT THEY WERE STANDING TOGETHER AT THE TIME. THERE FORE MRS. PEARL TRAMMELL TESTIMONY IS IN TOTAL CONFLICT WITH MRS. JUDITH GRAGG TESTIMONY. THERE FORE THEY HAD NO RIGHT TO SEARCH MY VEHICLE REPEATEDLY. THIS WAS DONE BECAUSE THE POLICE ON THE SCENE STATED THAT MRS. PEARL TRAMMELL SAW BILLY NORRIS WITH A GUN. THEREFORE AT JURY TRIAL NO WEAPON WAS INVOLVED IN THIS CRIME SO POLICES GAVE FALSE INFORMATION TO SEARCH MY VEHICLE. BILLY NORRIS TESTIFIED THAT I HAD A WEAPON ON THIS MORNING AND THE SAME MORNING THE HIDDEN WEAPONS WERE SENT TO THE FEDS A.B.I. IN MONTGOMERY FOR FINGER PRINTS AND THEY VERIFIED THAT MY FINGER PRINTS WERE NOT ON ANY OF THESE WEAPONS. THEREFORE THE CONCLUSION OF ME BEING ARMED WITH ANY OF THESE WEAPONS AT ANY TIME WAS A COMPLETE LIE MADE UP BY THE CO-DEFENDANT BILLY NORRIS. THIS WAS A DIRECT VIOLATION OF MY FOURTH AMENDMENT.

SE (2)

THE LAW STATES THAT POLICE OFFICERS WITH PROBABLE CAUSE TO SEARCH AN AUTOMOBILE ON THE SCENE WHERE IT WAS STOPPED MAY CONSTITUTIONALLY DO SO LATER AT THE STATION HOUSE WITHOUT FIRST OBTAINING A WARRANT, WHERE THE PROBABLE CAUSE FACTOR THAT DEVELOPED ON THE SCENE STILL OBTAINS AT THE STATION HOUSE, TEXAS V. WHITE (1975) 423 US 67, 46 LED 2D 209, 1975 US LEXIS 98, 96 S CT 304.

(4)  I THE DEFENDANT CHRISTOPHER McCullough DID SO TESTIFY AT THIS JURY TRIAL AND I WAS REPRESENTED BY ATTORNEY: Kyla Groff Kelim THEREFORE THE ASSISTANT DISTRICT ATTORNEY HAS GAVE FALSE INFORMATION FOR THE THIRD TIME IN HIS RESPONSE

(5)  THE STATE PROVIDED A DISCOVERY IN THEIR FAVOR BUT FAILED TO DISCLOSE EVIDENCE IN THE DEFENDANTS FAVOR SUCH AS: NO FINGERPRINTS ON ANY OF THE WEAPONS, NO WEAPON WAS SEEN OR SAID TO HAVE BEEN USED BY THE VICTIMS, CONFLICTING TESTIMONY BETWEEN MRS. JUDITH GRAGG AND MRS. PEARL TRAMMELL, AND ADMITTED FALSE EVIDENCE AS TO WIT - A SKI-MASK, AND MORE.

(6)  By My FIFTH AMENDMENT RIGHT A PRIVILEGE AGAINST SELF-INCRIMINATION PROTECTS ME AS THE

PERSON ACCUSED OF A CRIME, IT PROTECTS ME FROM BEING COMPELLED TO TESTIFY AGAINST MYSELF OR OTHERWISE PROVIDE THE STATE WITH EVIDENCE OF A TESTIMONIAL OR COMMUNICATIVE NATURE. AN ACCUSED COMMUNICATION MUST ITSELF, EXPLICITLY OR IMPLICITLY, RELATE A FACTUAL ASSERTION OR DISCLOSE INFORMATION, AS ONLY THEN ARE PERSONS ARE COMPELLED TO BE WITNESSES AGAINST THEMSELVES. PENNSYLVANIA V. MUNIZ (1990) 496 US 582, 110 L ED 2D 528, 1990 US LEXIS 3211, 110 S. CT. 2638. I TESTIFIED THAT I WAS THERE TO WITNESS A CRIMINAL ACT NOT COMMIT ONE. THERE FORE IT CAN NOT BE USED AGAINST AS EVIDENCE AT TRIAL

WHEREFORE THE PREMISES CONSIDERED, THE DEFENDANT RESPECTFULLY REQUEST AN EVIDENTIARY HEARING AND TO BE GRANTED RELIEF UNDER RULE 32 POST CONVICTION RELIEF.

RESPECT FULLY SUBMITTED THIS _ DAY OF SEPTEMBER 2005

Christopher C McCullough
Christopher C McCullough
PRO 'SE

HIS ISI
3 COPIES

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING MOTION WAS SERVED TO ASS. D.A. DEREK L. TAUTOWBY PLACING A COPY OF THE SAME, POSTAGE PREPARED IN THE US. WITH ADDRESSED TO THE CHAMBERS COUNTY COURT TO ...

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA )
)
VS. )          CASE NO. CC-02-318
)
CHRISTOPHER McCULLOUGH )

## ORDER

After consideration of submissions from State and Defense, Defendant's Petition For Relief From Conviction Or Sentence is DENIED.

Let a copy of this Order issue to the defendant and the District Attorneys Office.

Signed this the 17th day of November, 2005.

RAY D. MARTIN
CIRCUIT JUDGE



FILED IN OFFICE THIS

NOV 17 2005

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA



EXHIBIT
2E

C. McCullough DA,

*Starrett 65873*

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

State of Alabama

Judicial Building, 300 Dexter Avenue

## P. O. Box 301555

## Montgomery, AL 36130-1555

| | | |
|---|---|---|
| **H.W."BUCKY" McMILLAN**<br>**Presiding Judge**<br>**SUE BELL COBB**<br>**PAMELA W. BASCHAB**<br>**GREG SHAW**<br>**A. KELLI WISE**<br>**Judges** | **RELEASED**<br>SEP 2 4 2004<br>CLERK<br>ALA COURT CRIMINAL APPEALS | **Lane W. Mann**<br>**Clerk**<br>**Sonja McKnight**<br>**Assistant Clerk**<br>**(334) 242-4590**<br>**Fax (334) 242-4689** |

## MEMORANDUM

CR-03-1103                Chambers Circuit Court CC-02-318

## Christopher McCullough v. State of Alabama

SHAW, Judge.

Christopher McCullough was indicted for, and convicted of, attempted first-degree burglary, a violation of §§ 13A-7-5 and 13A-4-2, Ala. Code 1975. He was sentenced, as a habitual felony offender, to 40 years' imprisonment.

Our review of the record reveals the following: Ola Pearl Trammell testified that around 10:00 a.m. on March 19, 2002, she looked out the window of her employer's home located on County Club Road in Lanett and observed two black men -- one was wearing a ski mask over his face and was running around the house toward the front of the house and the other man had a blue and white bandana over the lower portion



of his face and he was crouched down.   She alerted her employer, Michael Gragg, and he called emergency 911. Trammell testified that after her employer had called the police, she observed the two men running past a barn located on the Graggs' property toward a cemetery located near the Graggs' property.

The police responded to the scene very quickly.   Officer Robbie Bettis of the Lanett Police Department testified that he had turned into Hillcrest Cemetery, which is very near the Graggs' property, and that when he observed a car with two black males, he activated his lights and stopped the car. McCullough was the driver of this car.  A search revealed that McCullough had a blue ski mask in his back pocket, while a search of the car revealed a blue bandana and some gloves on the floorboard of the front passenger's seat and two handguns in a compartment located between the back seat and the trunk on the driver's side.  McCullough and Norris were transported to the Lanett Police Department where they were advised of their Miranda[1] rights.

Billy Norris testified at trial that he had entered a guilty plea in this case and was serving a 20-year sentence. Norris testified to the following:   On the morning of March 19, 2002, McCullough picked him up at the Kroger's grocery store in Lanett.  McCullough told him that he had seen a house out on County Club Road that they should check out, so they drove to County Club Road and parked the car at the back of a cemetery near the house.   Norris had a blue bandana and some gloves, and McCullough had a ski mask.   Norris saw McCullough put a pistol in the waistband of his pants, with his shirt over it.   Then they cut through the woods to the Graggs' house.  Norris tied the bandana over the lower portion of his face and McCullough put on the ski mask.  Norris stated that their intent was to take something from the house.  When they got to the house, Norris went to one side of the house and McCullough went to the other side of the house to look in the windows and see if anyone was home.  When Norris looked in a window on the back side of the house, he saw a woman folding clothes.  Norris testified that he told McCullough that they needed to leave because someone was in the house and that

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

2

McCullough told him that "the house was too good" and that
"[they] need[ed] to get this and that." (R. 133.) Then they
heard someone coming up the driveway and they "took off
running" to McCullough's car. (R. 134.) The police were able
to apprehend them in McCullough's car before they were able to
leave the cemetery.

Lieutenant Richard Carter of the Lanett Police Department
testified that he spoke with McCullough on March 19, 2002, at
the Lanett Police Department, and that McCullough gave a
statement to him regarding this incident. Lt. Carter stated
that he wrote out McCullough's statement and that McCullough
read the written statement and said that it was correct, but
that he refused to sign it. Lt. Carter read McCullough's
statement to the jury:

> "Today I picked [Norris] up at my house. I had
> been to Lafayette to the food stamp office. I was
> headed back to Lafayette when we saw the house. We
> stopped and parked down at the cemetery. When we
> got out I had a mask and the 9mm. [Norris] had a
> bandana and gloves. He left the duct tape in the
> car. We went through [the] woods to the house.
> When we got to the house, [Norris] saw a lady inside
> folding clothes. He told me. And I said, '[L]et's
> go.' He said, '[Y]ou got a gun. You might as well
> go on and do it.' I told him, '[N]o.' Then we was
> walking back towards the woods when we heard the
> police car coming up. Then we ran through the woods
> to the car."

(R. 166.)

McCullough testified at trial and described the events of
March 19, 2002, as follows: On the Saturday night prior to
March 19, 2002, Norris had told him that there was "some
activity he wanted to do" (R. 177) because he wanted to be a
member of a gang. On March 19, 2002, McCullough picked Norris
up at the Kroger grocery store after McCullough had taken his
girlfriend for a food-stamp interview. Norris told McCullough
that there was a house down by a cemetery that he wanted to go
to so they went to the cemetery, parked the car, and walked
through the woods to the house. McCullough testified that he
stopped at the edge of the woods while Norris, who had a

3

bandana around his face, went and looked in the windows of the house.  Norris came back and told McCullough that although there was a woman in the house folding clothes, he was still going to kick in the door.  McCullough testified that he talked Norris out of kicking in the door, and that when they heard the police coming up the driveway, they ran through the woods to the car.

McCullough testified that he and Norris were in his Ford Mustang automobile when the police stopped them at the cemetery, but that he did not know that there were guns in his automobile; that he does not know how the guns got in his automobile; and that he did not have a gun during this incident.  Additionally, he testified that he did leave the edge of the woods and go up to the house and that he did have a ski mask on when he went up to the house because he did not want anyone to see his face, but that he did not go up to the house with the intention of breaking into the house.  He testified that he went up to the house to try to stop Norris from doing something foolish, i.e., breaking into the house while someone was inside.  McCullough admitted that he and Lt. Carter had "a verbal conversation ... about what happened" on March 19, 2002, but that "everything [he] told [Lt. Carter] ... [Lt. Carter] switched around" and that he refused to sign the statement because "[i]t wasn't true."  (R. 182.)

I.

McCullough contends that he was entitled to a judgment of acquittal because, he said, the State failed to prove an overt act toward the commission of a burglary.

"'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'"  Ballenger v. State, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting Faircloth v. State, 471 So. 2d 485, 488 (Ala. Crim. App. 1984).  "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'"  Nunn v. State, 697 So. 2d 497,

498 (Ala. Crim. App. 1997), quoting <u>O'Neal v. State</u>, 602 So. 2d 462, 464 (Ala. Crim. App. 1992). "'When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" <u>Farrior v. State</u>, 728 So. 2d 691, 696 (Ala. Crim. App. 1998), quoting <u>Ward v. State</u>, 557 So. 2d 848, 850 (Ala. Crim. App. 1990). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is <u>legally</u> sufficient to allow submission of an issue for decision [by] the jury." <u>Ex parte Bankston</u>, 358 So. 2d 1040, 1042 (Ala. 1978).

As the trial court stated in response to McCullough's contention that the State had failed to prove that McCullough had committed an overt act toward the commission of a burglary:

"Any further and it would have been a burglary. There's evidence in this case that these two defendants were wearing ski masks and/or bandanas and were armed with high powered pistol or pistols, at least one pistol, I think that being a 9 mm. They actually approached the house. There's testimony that they were at the window of the house, that there's evidence previously prior to that time -- prior to them being at the window that they went to this house with intent to burglarize this house. There's even evidence and testimony that after they discovered that the dwelling was occupied that there was even a further evidence of still an intent on the part of at least one of them to go on and burglarize the house. Actually the end of their action was caused only when the police arrived."

(R. 215.) Based on our review of the record, we conclude that there was sufficient evidence to allow submission of this case to the jury.

McCullough also argues that "[t]he only evidence that supports a conviction was the testimony of the co-defendant and the unsigned statement of the defendant." (McCullough's brief at pp. 11-12.) McCullough states that the co-defendant is "a convicted liar ... who repeatedly made self-serving

5

statements regarding his involvement in the offense."
(McCullough's brief at p. 12.)

However, any "inconsistencies and contradictions in the
State's evidence, as well as [any] conflict between the
State's evidence and that offered by the appellant, [goes] to
the weight of the evidence and [creates a question] of fact to
be resolved by the jury." Rowell v. State, 647 So. 2d 67,
69-70 (Ala. Crim. App. 1994). "'"[T]he credibility of
witnesses and the weight or probative force of testimony is
for the jury to judge and determine."'" Johnson v. State, 555
So. 2d 818, 820 (Ala. Crim. App. 1989), quoting Harris v.
State, 513 So. 2d 79, 81 (Ala. Crim. App. 1987), quoting, in
turn, Byrd v. State, 24 Ala. App. 451, 136 So. 431 (1931).
"We have repeatedly held that it is not the province of this
court to reweigh the evidence presented at trial." Johnson,
555 So. 2d at 820. "'When the jury has passed on the
credibility of evidence tending to establish the defendant's
guilt, this Court cannot disturb its finding.'" Rowell, 647
So. 2d at 69, quoting Collins v. State, 412 So. 2d 845, 846
(Ala. Crim. App. 1982). Furthermore, "'[t]his Court must view
the evidence in the light most favorable to the State, and
"draw all reasonable inferences and resolve all credibility
choices in favor of the trier of fact."'" D.L. v. State, 625
So. 2d 1201, 1204, (Ala. Crim. App. 1993), quoting Woodberry
v. State, 497 So. 2d 587, 590 (Ala. Crim. App. 1986). "Any
issues regarding the weight and credibility of the evidence
are not reviewable on appeal once the State has made a
prima facie case." Jones v. State, 719 So. 2d 249, 255 (Ala.
Crim. App. 1996).

The jury had the opportunity to hear the testimony of
McCullough, Norris, and Lt. Carter, who obtained McCullough's
statement, and to observe the witnesses as they testified. In
light of the foregoing, we will not disturb the jury's
determination that McCullough was guilty of attempted first-
degree burglary.

II.

McCullough contends that "the only evidence that
[McCullough] committed the crime of attempted burglary in the
first degree came in the form of testimony from co-defendant
Billy Norris" and that "[t]he conviction cannot stand upon

this testimony alone" because, he says, the State failed to provide sufficient evidence to corroborate Norris's testimony as required by § 12-21-222, Ala. Code 1975.  (McCullough's brief at p. 14.)

As the State points out, this issue has not been preserved for appellate review because the first time that McCullough raised this issue was in his motion for a new trial.  See <u>Brown v. State</u>, 645 So. 2d 309, 312 (Ala. Crim. App. 1994), wherein this Court stated:

> "Specifically, the appellant contends that [a prosecution witness] was an accomplice, and that the state failed to corroborate his testimony as is required by § 12-21-222, Code of Alabama 1975.
>
> "This issue was presented for the first time in the appellant's motion for a new trial and thus was not timely.  If a defendant does not object to the testimony of an accomplice, that issue is not preserved for appellate review."

However, even if this issue had been properly preserved for appellate review, it is meritless.  As noted above, McCullough gave a statement to the police that sufficiently corroborated Norris's testimony that they had parked at the cemetery and walked through the woods to the Graggs' house; that Norris was wearing a bandana over the lower portion of his face; that McCullough was armed and was wearing a ski mask; and that when they heard the police coming, they ran back through the woods to the car.  See <u>Harris v. State</u>, 420 So. 2d 812, 817 (Ala. Crim. App. 1982) ("A voluntary confession or an incriminating statement of an accused is sufficient corroboration of an accomplice's testimony for purposes of § 12-21-222.")

### III.

McCullough also contends that the trial court abused its discretion when it refused to charge the jury on the lesser-included offenses of attempted criminal trespass in the first degree and criminal trespass in the second degree.  At the charge conference, McCullough requested that the trial court charge the jury on the lesser-included offenses of attempted

criminal trespass in the first degree and criminal trespass in the second degree and argued his position as to why the trial court should give these requested charges. The trial court stated that it did not see any basis for giving these requested charges. Specifically, the trial court stated:

> "But not when there's no basis. I'm saying I don't think there's any basis in the evidence for that charge of attempted criminal trespass in the first degree. The only evidence presented is that presented by the State of him attempting to enter the dwelling and was that specifically to commit a crime therein being the theft.

> "....

> "... His testimony is that he was trying to prevent the commission of a felony. And I don't see how that can be construed as a unlawful entry for the purpose of giving that charge [of criminal trespass in the second degree].

> "....

> "... His testimony is that the only entry on these premises was to stop the commission of the offense by his co-defendant. That's his testimony. The State's testimony is basically that they were armed, that the intent was to break into the dwelling that they knew to be occupied. I don't think any of the lesser-included charges apply save with the exception of burglary second. And for the record that's based on the actual testimony and evidence presented and looking at both the State's evidence and defense evidence."

(R. 202-06.) Defense Counsel excepted to the trial court's ruling. We construe this exchange between counsel and the trial court as being sufficient to satisfy the preservation requirement. The trial court clearly understood why counsel wanted the charges and that counsel was objecting to the trial court's ruling.

8

"'A person accused of the greater offense has a right to have the court charge on lesser included offenses when there is a reasonable theory from the evidence supporting those lesser included offenses.' MacEwan v. State, 701 So. 2d 66, 69 (Ala. Crim. App. 1997). An accused has the right to have the jury charged on '"any material hypothesis which the evidence in his favor tends to establish."' Ex parte Stork, 475 So. 2d 623, 624 (Ala. 1985). '[E]very accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however[ ] weak, insufficient, or doubtful in credibility,' Ex parte Chavers, 361 So. 2d 1106, 1107 (Ala. 1978), 'even if the evidence supporting the charge is offered by the State.' Ex parte Myers, 699 So. 2d 1285, 1290-91 (Ala. 1997), cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998). However, '[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.' § 13A-1-9(b), Ala. Code 1975. 'The basis of a charge on a lesser-included offense must be derived from the evidence presented at trial and cannot be based on speculation or conjecture.' Broadnax v. State, 825 So. 2d 134, 200 (Ala. Crim. App. 2000), aff'd, 825 So. 2d 233 (Ala. 2001), cert. denied, 536 U.S. 964, 122 S.Ct. 2675, 153 L.Ed.2d 847 (2002). '"A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury."' Williams v. State, 675 So. 2d 537, 540-41 (Ala. Crim. App. 1996), quoting Anderson v. State, 507 So. 2d 580, 582 (Ala. Crim. App. 1987)."

Clark v. State, [Ms. CR-99-1062, June 27, 2003] ___ So. 2d ___, ___ (Ala. Crim. App. 2003).

Section 13A-7-2(a), Ala. Code 1975, states that "[a] person is guilty of criminal trespass in the first degree if

9

he knowingly enters or remains unlawfully in a dwelling." As the trial court noted, there was no rational basis for instructing the jury on attempted criminal trespass in the first degree because the evidence did not support such a charge -- McCullough testified that the only reason he went near the house was to prevent Norris from committing a felony (i.e., that he had no intent to enter the house), while the State's evidence indicated that McCullough and Norris were armed and that they went to the house for the purpose of entering it and committing a theft.  We agree with the trial court that McCullough was either guilty of attempted first-degree burglary or not guilty and find that it did not abuse its discretion when it declined to instruct the jury on attempted criminal trespass in the first degree.

Section 13A-7-3(a), Ala. Code 1975, states that "[a] person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in a building or upon real property which is fenced or enclosed in a manner designed to exclude intruders."  At the charge conference, McCullough's attorney argued that because Michael Gragg had testified that his property was posted with "No Trespassing" signs, McCullough was entitled to have the jury charged on criminal trespass in the second degree as a lesser-included offense because when McCullough entered the Graggs' property, he was guilty of criminal trespass in the second degree.  The trial court stated that there was no rational basis for charging the jury on criminal trespass in the second degree because McCullough had clearly testified that the only reason he had entered onto the property was to prevent Norris from committing a felony.  Additionally, while there was evidence that the property had been posted with "No Trespassing" signs, there was no evidence that the Graggs' "real property ... [was] fenced or enclosed in a manner designed to exclude intruders."  § 13A-7-3(a).  Thus, we find no abuse of discretion in the trial court's refusal to instruct the jury on criminal trespass in the second degree.

In light of the foregoing, McCullough's conviction and sentence are affirmed.

Affirmed by memorandum.

McMillan, P.J., and Cobb, J., concur. Baschab and Wise, JJ., concur in the result.