**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

February 21, 2007

# NOTICE OF CORRECTION

**From:** **Clerk's Office**

**Case Style:** **Christopher McCullough v. Daniel Jones, et al.**

**Case Number:** **#3:07-cv-00071-WHA**

**Referenced Document:** **Exhibit 1D to Document #8**
**Answer to Complaint**

**This notice has been docketed to enter the corrected pdf of Exhibit 1D to the referenced document into the record. The original Exhibit 1D contained pages that were upside down.**

**The pdf of the corrected Exhibit 1D is attached to this notice.**

*Starrett*
*65873*

Notice: This unpublished memorandum should not be cited as precedent.  See Rule 54, Ala.R.App.P.  Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

## State of Alabama
### Judicial Building, 300 Dexter Avenue
### P. O. Box 301555
### Montgomery, AL 36130-1555

**RELEASED**

**SEP 24 2004**

CLERK
ALA COURT CRIMINAL APPEALS

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Sonja McKnight
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## MEMORANDUM

CR-03-1103                    Chambers Circuit Court CC-02-318

### Christopher McCullough v. State of Alabama

SHAW, Judge.

Christopher McCullough was indicted for, and convicted of, attempted first-degree burglary, a violation of §§ 13A-7-5 and 13A-4-2, Ala. Code 1975.  He was sentenced, as a habitual felony offender, to 40 years' imprisonment.

Our review of the record reveals the following: Ola Pearl Trammell testified that around 10:00 a.m. on March 19, 2002, she looked out the window of her employer's home located on County Club Road in Lanett and observed two black men -- one was wearing a ski mask over his face and was running around the house toward the front of the house and the other man had a blue and white bandana over the lower portion



EXHIBIT
1D

of his face and he was crouched down.   She alerted her
employer, Michael Gragg, and he called emergency 911.
Trammell testified that after her employer had called the
police, she observed the two men running past a barn located
on the Graggs' property toward a cemetery located near the
Graggs' property.

The police responded to the scene very quickly.   Officer
Robbie Bettis of the Lanett Police Department testified that
he had turned into Hillcrest Cemetery, which is very near the
Graggs' property, and that when he observed a car with two
black males, he activated his lights and stopped the car.
McCullough was the driver of this car.  A search revealed that
McCullough had a blue ski mask in his back pocket, while a
search of the car revealed a blue bandana and some gloves on
the floorboard of the front passenger's seat and two handguns
in a compartment located between the back seat and the trunk
on the driver's side.   McCullough and Norris were transported
to the Lanett Police Department where they were advised of
their Miranda[1] rights.

Billy Norris testified at trial that he had entered a
guilty plea in this case and was serving a 20-year sentence.
Norris testified to the following:   On the morning of
March 19, 2002, McCullough picked him up at the Kroger's
grocery store in Lanett.  McCullough told him that he had seen
a house out on County Club Road that they should check out, so
they drove to County Club Road and parked the car at the back
of a cemetery near the house.   Norris had a blue bandana and
some gloves, and McCullough had a ski mask.   Norris saw
McCullough put a pistol in the waistband of his pants, with
his shirt over it.   Then they cut through the woods to the
Graggs' house. Norris tied the bandana over the lower portion
of his face and McCullough put on the ski mask.  Norris stated
that their intent was to take something from the house.  When
they got to the house, Norris went to one side of the house
and McCullough went to the other side of the house to look in
the windows and see if anyone was home.  When Norris looked in
a window on the back side of the house, he saw a woman folding
clothes.  Norris testified that he told McCullough that they
needed to leave because someone was in the house and that

_____

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

2

McCullough told him that "the house was too good" and that
"[they] need[ed] to get this and that." (R. 133.)  Then they
heard someone coming up the driveway and they "took off
running" to McCullough's car. (R. 134.)  The police were able
to apprehend them in McCullough's car before they were able to
leave the cemetery.

Lieutenant Richard Carter of the Lanett Police Department
testified that he spoke with McCullough on March 19, 2002, at
the Lanett Police Department, and that McCullough gave a
statement to him regarding this incident.  Lt. Carter stated
that he wrote out McCullough's statement and that McCullough
read the written statement and said that it was correct, but
that he refused to sign it.  Lt. Carter read McCullough's
statement to the jury:

> "Today I picked [Norris] up at my house.  I had
> been to Lafayette to the food stamp office.  I was
> headed back to Lafayette when we saw the house.  We
> stopped and parked down at the cemetery.  When we
> got out I had a mask and the 9mm.  [Norris] had a
> bandana and gloves.  He left the duct tape in the
> car.  We went through [the] woods to the house.
> When we got to the house, [Norris] saw a lady inside
> folding clothes.  He told me.  And I said, '[L]et's
> go.'  He said, '[Y]ou got a gun.  You might as well
> go on and do it.'  I told him, '[N]o.'  Then we was
> walking back towards the woods when we heard the
> police car coming up.  Then we ran through the woods
> to the car."

(R. 166.)

McCullough testified at trial and described the events of
March 19, 2002, as follows:  On the Saturday night prior to
March 19, 2002, Norris had told him that there was "some
activity he wanted to do" (R. 177) because he wanted to be a
member of a gang.  On March 19, 2002, McCullough picked Norris
up at the Kroger grocery store after McCullough had taken his
girlfriend for a food-stamp interview.  Norris told McCullough
that there was a house down by a cemetery that he wanted to go
to so they went to the cemetery, parked the car, and walked
through the woods to the house.  McCullough testified that he
stopped at the edge of the woods while Norris, who had a

3

bandana around his face, went and looked in the windows of the house. Norris came back and told McCullough that although there was a woman in the house folding clothes, he was still going to kick in the door. McCullough testified that he talked Norris out of kicking in the door, and that when they heard the police coming up the driveway, they ran through the woods to the car.

McCullough testified that he and Norris were in his Ford Mustang automobile when the police stopped them at the cemetery, but that he did not know that there were guns in his automobile; that he does not know how the guns got in his automobile; and that he did not have a gun during this incident. Additionally, he testified that he did leave the edge of the woods and go up to the house and that he did have a ski mask on when he went up to the house because he did not want anyone to see his face, but that he did not go up to the house with the intention of breaking into the house. He testified that he went up to the house to try to stop Norris from doing something foolish, i.e., breaking into the house while someone was inside. McCullough admitted that he and Lt. Carter had "a verbal conversation ... about what happened" on March 19, 2002, but that "everything [he] told [Lt. Carter] ... [Lt. Carter] switched around" and that he refused to sign the statement because "[i]t wasn't true." (R. 182.)

I.

McCullough contends that he was entitled to a judgment of acquittal because, he said, the State failed to prove an overt act toward the commission of a burglary.

"'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting Faircloth v. State, 471 So. 2d 485, 488 (Ala. Crim. App. 1984). "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So. 2d 497,

4

498 (Ala. Crim. App. 1997), quoting O'Neal v. State, 602
So. 2d 462, 464 (Ala. Crim. App. 1992). "'When there is legal
evidence from which the jury could, by fair inference, find
the defendant guilty, the trial court should submit [the case]
to the jury, and, in such a case, this court will not disturb
the trial court's decision.'" Farrior v. State, 728 So. 2d
691, 696 (Ala. Crim. App. 1998), quoting Ward v. State, 557
So. 2d 848, 850 (Ala. Crim. App. 1990). "The role of
appellate courts is not to say what the facts are.  Our role
... is to judge whether the evidence is legally sufficient to
allow submission of an issue for decision [by] the jury."
Ex parte Bankston, 358 So. 2d 1040, 1042 (Ala. 1978).

As the trial court stated in response to McCullough's
contention that the State had failed to prove that McCullough
had committed an overt act toward the commission of a
burglary:

"Any further and it would have been a burglary.
There's evidence in this case that these two
defendants were wearing ski masks and/or bandanas
and were armed with high powered pistol or pistols,
at least one pistol, I think that being a 9 mm.
They actually approached the house.   There's
testimony that they were at the window of the house,
that there's evidence previously prior to that time
-- prior to them being at the window that they went
to this house with intent to burglarize this house.
There's even evidence and testimony that after they
discovered that the dwelling was occupied that there
was even a further evidence of still an intent on
the part of at least one of them to go on and
burglarize the house.   Actually the end of their
action was caused only when the police arrived."

(R. 215.)  Based on our review of the record, we conclude that
there was sufficient evidence to allow submission of this case
to the jury.

McCullough also argues that "[t]he only evidence that
supports a conviction was the testimony of the co-defendant
and the unsigned statement of the defendant."  (McCullough's
brief at pp. 11-12.)  McCullough states that the co-defendant
is "a convicted liar ... who repeatedly made self-serving

statements regarding his involvement in the offense."
(McCullough's brief at p. 12.)

However, any "inconsistencies and contradictions in the
State's evidence, as well as [any] conflict between the
State's evidence and that offered by the appellant, [goes] to
the weight of the evidence and [creates a question] of fact to
be resolved by the jury." Rowell v. State, 647 So. 2d 67,
69-70 (Ala. Crim. App. 1994). "'"[T]he credibility of
witnesses and the weight or probative force of testimony is
for the jury to judge and determine."'" Johnson v. State, 555
So. 2d 818, 820 (Ala. Crim. App. 1989), quoting Harris v.
State, 513 So. 2d 79, 81 (Ala. Crim. App. 1987), quoting, in
turn, Byrd v. State, 24 Ala. App. 451, 136 So. 431 (1931).
"We have repeatedly held that it is not the province of this
court to reweigh the evidence presented at trial." Johnson,
555 So. 2d at 820. "'When the jury has passed on the
credibility of evidence tending to establish the defendant's
guilt, this Court cannot disturb its finding.'" Rowell, 647
So. 2d at 69, quoting Collins v. State, 412 So. 2d 845, 846
(Ala. Crim. App. 1982). Furthermore, "'[t]his Court must view
the evidence in the light most favorable to the State, and
"draw all reasonable inferences and resolve all credibility
choices in favor of the trier of fact."'" D.L. v. State, 625
So. 2d 1201, 1204, (Ala. Crim. App. 1993), quoting Woodberry
v. State, 497 So. 2d 587, 590 (Ala. Crim. App. 1986). "Any
issues regarding the weight and credibility of the evidence
are not reviewable on appeal once the State has made a
prima facie case." Jones v. State, 719 So. 2d 249, 255 (Ala.
Crim. App. 1996).

The jury had the opportunity to hear the testimony of
McCullough, Norris, and Lt. Carter, who obtained McCullough's
statement, and to observe the witnesses as they testified. In
light of the foregoing, we will not disturb the jury's
determination that McCullough was guilty of attempted first-
degree burglary.

II.

McCullough contends that "the only evidence that
[McCullough] committed the crime of attempted burglary in the
first degree came in the form of testimony from co-defendant
Billy Norris" and that "[t]he conviction cannot stand upon

6

this testimony alone" because, he says, the State failed to provide sufficient evidence to corroborate Norris's testimony as required by § 12-21-222, Ala. Code 1975. (McCullough's brief at p. 14.)

As the State points out, this issue has not been preserved for appellate review because the first time that McCullough raised this issue was in his motion for a new trial. See <u>Brown v. State</u>, 645 So. 2d 309, 312 (Ala. Crim. App. 1994), wherein this Court stated:

> "Specifically, the appellant contends that [a prosecution witness] was an accomplice, and that the state failed to corroborate his testimony as is required by § 12-21-222, Code of Alabama 1975.
>
> "This issue was presented for the first time in the appellant's motion for a new trial and thus was not timely. If a defendant does not object to the testimony of an accomplice, that issue is not preserved for appellate review."

However, even if this issue had been properly preserved for appellate review, it is meritless. As noted above, McCullough gave a statement to the police that sufficiently corroborated Norris's testimony that they had parked at the cemetery and walked through the woods to the Graggs' house; that Norris was wearing a bandana over the lower portion of his face; that McCullough was armed and was wearing a ski mask; and that when they heard the police coming, they ran back through the woods to the car. See <u>Harris v. State</u>, 420 So. 2d 812, 817 (Ala. Crim. App. 1982) ("A voluntary confession or an incriminating statement of an accused is sufficient corroboration of an accomplice's testimony for purposes of § 12-21-222.")

### III.

McCullough also contends that the trial court abused its discretion when it refused to charge the jury on the lesser-included offenses of attempted criminal trespass in the first degree and criminal trespass in the second degree. At the charge conference, McCullough requested that the trial court charge the jury on the lesser-included offenses of attempted

7

criminal trespass in the first degree and criminal trespass in the second degree and argued his position as to why the trial court should give these requested charges. The trial court stated that it did not see any basis for giving these requested charges. Specifically, the trial court stated:

> "But not when there's no basis. I'm saying I don't think there's any basis in the evidence for that charge of attempted criminal trespass in the first degree. The only evidence presented is that presented by the State of him attempting to enter the dwelling and was that specifically to commit a crime therein being the theft.
>
> "....
>
> "... His testimony is that he was trying to prevent the commission of a felony. And I don't see how that can be construed as a unlawful entry for the purpose of giving that charge [of criminal trespass in the second degree].
>
> "....
>
> "... His testimony is that the only entry on these premises was to stop the commission of the offense by his co-defendant. That's his testimony. The State's testimony is basically that they were armed, that the intent was to break into the dwelling that they knew to be occupied. I don't think any of the lesser-included charges apply save with the exception of burglary second. And for the record that's based on the actual testimony and evidence presented and looking at both the State's evidence and defense evidence."

(R. 202-06.) Defense Counsel excepted to the trial court's ruling. We construe this exchange between counsel and the trial court as being sufficient to satisfy the preservation requirement. The trial court clearly understood why counsel wanted the charges and that counsel was objecting to the trial court's ruling.

"'A person accused of the greater offense has a right to have the court charge on lesser included offenses when there is a reasonable theory from the evidence supporting those lesser included offenses.' MacEwan v. State, 701 So. 2d 66, 69 (Ala. Crim. App. 1997). An accused has the right to have the jury charged on '"any material hypothesis which the evidence in his favor tends to establish."' Ex parte Stork, 475 So. 2d 623, 624 (Ala. 1985). '[E]very accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however[ ] weak, insufficient, or doubtful in credibility,' Ex parte Chavers, 361 So. 2d 1106, 1107 (Ala. 1978), 'even if the evidence supporting the charge is offered by the State.' Ex parte Myers, 699 So. 2d 1285, 1290-91 (Ala. 1997), cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998). However, '[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.' § 13A-1-9(b), Ala. Code 1975. 'The basis of a charge on a lesser-included offense must be derived from the evidence presented at trial and cannot be based on speculation or conjecture.' Broadnax v. State, 825 So. 2d 134, 200 (Ala. Crim. App. 2000), aff'd, 825 So. 2d 233 (Ala. 2001), cert. denied, 536 U.S. 964, 122 S.Ct. 2675, 153 L.Ed.2d 847 (2002). '"A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury."' Williams v. State, 675 So. 2d 537, 540-41 (Ala. Crim. App. 1996), quoting Anderson v. State, 507 So. 2d 580, 582 (Ala. Crim. App. 1987)."

Clark v. State, [Ms. CR-99-1062, June 27, 2003] ____ So. 2d ____, ____ (Ala. Crim. App. 2003).

Section 13A-7-2(a), Ala. Code 1975, states that "[a] person is guilty of criminal trespass in the first degree if

he knowingly enters or remains unlawfully in a dwelling." As
the trial court noted, there was no rational basis for
instructing the jury on attempted criminal trespass in the
first degree because the evidence did not support such a
charge -- McCullough testified that the only reason he went
near the house was to prevent Norris from committing a felony
(i.e., that he had no intent to enter the house), while the
State's evidence indicated that McCullough and Norris were
armed and that they went to the house for the purpose of
entering it and committing a theft.  We agree with the trial
court that McCullough was either guilty of attempted first-
degree burglary or not guilty and find that it did not abuse
its discretion when it declined to instruct the jury on
attempted criminal trespass in the first degree.

    Section 13A-7-3(a), Ala. Code 1975, states that "[a]
person is guilty of criminal trespass in the second degree if
he knowingly enters or remains unlawfully in a building or
upon real property which is fenced or enclosed in a manner
designed to exclude intruders."  At the charge conference,
McCullough's attorney argued that because Michael Gragg had
testified that his property was posted with "No Trespassing"
signs, McCullough was entitled to have the jury charged on
criminal trespass in the second degree as a lesser-included
offense because when McCullough entered the Graggs' property,
he was guilty of criminal trespass in the second degree.  The
trial court stated that there was no rational basis for
charging the jury on criminal trespass in the second degree
because McCullough had clearly testified that the only reason
he had entered onto the property was to prevent Norris from
committing a felony.  Additionally, while there was evidence
that the property had been posted with "No Trespassing" signs,
there was no evidence that the Graggs' "real property ...
[was] fenced or enclosed in a manner designed to exclude
intruders."  § 13A-7-3(a).  Thus, we find no abuse of
discretion in the trial court's refusal to instruct the jury
on criminal trespass in the second degree.

    In light of the foregoing, McCullough's conviction and
sentence are affirmed.

Affirmed by memorandum.

McMillan, P.J., and Cobb, J., concur. Baschab and Wise, JJ., concur in the result.